PLANTERS and MERCHANTS' BANK of HUNTSVILLE,
v.
WILLIAM G. HILL, et al.

1. On the bond of Cashier of Bank, conditioned that he shall with fidelity and according to the best of his skill, &c. conduct himself in said office, " safely and securely keeping all moneys deposited, refunding and paying over the same when properly required," Cashier and securities are not chargeable for loss by robbery.
2. Plea that Cashier was violently robbed of the money while he was in the discharge of his duty, is defective, unless it set forth the circumstances, time, place, &c. of the robbery.

DEBT in the Circuit Court of Madison county, by the plaintiffs against the defendants in error, on their bond in the penalty of $70,000, conditioned, " that whereas the said William G. Hill hath been appointed to the office of Cashier of the said Bank, now if the said William G. Hill, shall, with fidelity, punctuality, and attention, to the best of his skill, judgement, and ability, conduct himself in his said office well and truly, discharging all its duties, executing the orders of the Directors of said

26

Bank, safely and securely keeping all moneys deposited in his hands, refunding and paying over the same when properly required, rendering, when called on for full and perfect exhibits of the state of the Bank, the amount of specie and bills on hand, the amount of deposites and debts due, the amount and denominations of its notes issued and in circulation, keeping his accounts with the Bank in a clear and satisfactory manner, in regular series in well bound books, (to be provided by the Bank,) subject at all times to the inspection of the Directors; and performing promptly and faithfully, all and singularly, the duties, acts, and things required of him in virtue of his office, the act of incorporation, the rules, regulations, and bye-laws, made or to be made; making no embezzlements of moneys, notes, bills, bonds deposited, or other evidences of debt, due to or from the said Bank; renewing his obligation, and giving such additional securities from time to time as the said President and Directors may deem fit to require," &c. " then," &c.

The declaration, after reciting the several covenants in the condition of the bond, avers that $26,420 32, belonging to the plaintiffs, had been deposited in the hands of said Cashier, and assigns as

First breach, That he had failed and refused to pay over the same, although requested, &c.

Second breach, That he had embezzled the same.

The defendants after craving oyer of the bond and condition, plead,

1. That Hill had well and truly kept and performed all the said conditions, covenants, &c. safely and securely keeping all moneys deposited in his hands, refunding and paying over the same when properly required, except as to the said sum of $26,430 32, as set forth in the declaration; of which sum, on the 13th day of October, 1824, said Hill, while in the discharge of his duties as Cashier, was violently robbed by persons unknown to the defendants; which sum consisted of the notes of said Bank, to said nominal amount, and is the same sum mentioned in the first and in the second breach.

2nd Plea : In answer to the charge of not refunding, averred the same matter.

3rd Plea : Averred the same matter in answer to the charge of embezzling.

Neither of these pleas averred the circumstances or place of the robbery alleged.

JULY 1827.

Huntsville Bank
v.
Hill, et al.

There was a fourth plea which did not affect the decision of the cause; that the Cashier had not taken the oath required by the bye-laws of the corporation. Demurrer and joinder to all the pleas.

The Circuit Court sustained the demurrer to the fourth plea, and overruled the demurrers to the three first, and rendered judgement for the defendants. The plaintiffs in the action on their writ of error to this Court, assigned that the Circuit Court erred in the judgement on the three first pleas.

HOPKINS, for plaintiff in error.

The condition of the bond, "safely and securely keeping all moneys deposited, refunding and paying over the same," is unqualified. Does the general condition, that the Cashier shall with fidelity, and to the best of his skill, judgement and ability, conduct himself in his said office, qualify all the special conditions? The several covenants usual in a deed of conveyance for land are intended each to secure to the vendee its appropriate object. If the first covenant is restricted, as that the vendee shall quietly hold and enjoy, notwithstanding any act done by the vendor, it is reasonable to attach the same restriction to each successive covenant. From the mere insertion of the subsequent covenants, it cannot be inferred that the vendor intended these to be free from the restrictions attached to the first, for the several objects of these could not be attained by the first covenant; and as he has limited the first, it is to be inferred that the parties intended that each subsequent specific covenant should be limited in like manner. But in such a deed, if the first and restricted covenant be followed by a general unrestricted covenant, and that by another which is restricted, the intermediate unqualified covenant is never subjected to the restrictions attached to the preceding or following, for here the intention of the parties that it shall not be so subjected, is manifest. In such an instrument, each covenant expressed, has its appropriate object and effect, which would not be attained without such specific covenant. But in this case, if the construction sustained by the Circuit Court be correct, the first and general condition includes all the objects of the bond, and all the other conditions are mere inoperative surplusage. Would not a robbery by consent or procurement of the Cashier, or a loss of the money by his negligence, be a breach of

JULY 1827.

Huntsville Bank
v.
Hill, et al.

the first and general condition? So the condition to keep fair and regular accounts, and all the other specified conditions, if restricted as the defendants contend, are included in the first. But surely the parties did not intend an idle and useless employment of words in the subsequent conditions. Surely in this as in other contracts, each condition was intended by the parties for its appropriate object, and should have its appropriate effect. If the Cashier did not keep clear and regular accounts, render an exhibit of the state of the Bank, or give additional security when required, although with fidelity, and to the best of his skill and ability, he had endeavored to perform all those duties, is it not clear that the conditions must have been broken? And how is the special condition for safely and securely keeping and refunding and paying over the money to be distinguished from these? In committing this important trust to the Cashier, ordinary prudence required that the Directory should be made safe as to his ability to keep, and to his keeping clear and regular accounts, &c. and they have required and obtained conditions to this effect. It was at least as necessary that they should be assured that their Cashier would safely and securely keep, and refund the money committed to his care, and they have required and obtained a special condition to this effect, as unqualified as the other. [a]

The restrictions on a general covenant must be by technical language. The attention of the parties must be called to these restrictions by words which, by their known legal import, have this effect. [b] If covenants relate to divers things, a restriction as to one, shall not operate on others of distinct character. There were duties of the Cashier not specially enumerated in the condition of the bond, such as attending regularly at at the banking house, arranging the notes offered for discount, signing and registering the bank notes, &c. &c. It was to secure the performance of these unenumerated duties, not to qualify the special conditions agreed on, that the general condition was inserted.

It will be contended that the condition for safely keeping the money was but a contract of bailment. But this is a case on a penal bond; by the law as it stood before the statute of William III. the whole penalty was recoverable at law. But on a contract of bailment, the reco-

[a] 10 John 27. 1 Saund. 216, n. 2. Co. L. 206. 1 Esp Dig. 20.

[b] Sug. Vend. 410, 415, 2 Bos. & P. 575, 19.

very was always in damages proportioned to the value of the thing lost. On a contract of bailment, as to work up materials, &c. if the bailee die, his representatives may perform the undertaking; but if the Cashier had died, would his executors or administrators have been entitled to perform the duties for the residue of the term? If it be a contract of bailment, of what class is it? Innkeepers and common carriers are liable, although robbed, and this on reasons of public policy, which I need not here state. Are not these reasons fully as strong in the case of a Cashier of a Bank? He has charge of the money which represents the property and industry of the whole community. It is continually passing to and from his hands. For the most part it cannot, like a bale of goods, or the baggage of a traveller, be identified. The facilities of improperly conveying away the property committed to his charge, under pretence of theft or robbery, are evidently greater in his case than in the case of an innkeeper or common carrier. It is no answer to say, that there is no adjudged case of the liability of a Cashier to this extent. The law of bailment originated before the establishment of banks. It has been modified with the progress of commerce, so as to secure responsibility according to the nature of the trust confided. If the principles of the defendants pleas can be sustained, how can the accountability of the sheriffs, tax collectors, collectors of duties, receivers of public moneys, treasurers, and the various officers to whom are confided all the public revenue, and almost all the resources of the country, be secured? In the history of this country, it is well known that the receiver in the land office at Huntsville had a large sum of money stolen from him, and that on clear principles of policy, Congress refused to afford any relief. As to what may be said of the hardships of such cases, the plain answer is, such is the contract. It would be highly imprudent to commit to any one a trust so easily abused, without taking adequate means to secure the thing entrusted, and it would be idle to require such an obligation, if it were not to be enforced. If a lessee contract to return the premises in the same repair as when received, he is bound to make good injury or loss, though not resulting from his fault; so it is a hard case that a tenant should pay rent for the residue of his term after the house has been consumed by

JULY 1827.

Huntsville Bank
v.
Hill, et al.

fire, or that a sheriff should be liable for the escape of a prisoner, rescued by an overwhelming force. But so the law is settled, on sound principles of general justice and policy, and the tribunal which may be resorted to, must in the one case as in the other, give effect to such contract, and has no power to relieve from its hardship.

It will be contended that the charter grants no power to the corporation to take such a bond. I think that I have shewn that the business of Bank could not go on, or the stockholders or the public be safe, without such security for the funds. The power to take it then, seems necessary, in order to sustain the corporation in its functions, as authorized by its charter.—I might say in order to sustain its existence. Would a mortgage or any other real security for the same object, or. to secure a debt to the Bank, have been valid? Yet the charter has not in so many words given the power to take a mortgage.

But the pleas do not aver that the robbery was without the Cashier's consent. They allege new matters, and shew no venue. They should have shewn the time and place of the alleged robbery; when, where, and how it occurred; so that the plaintiff might fairly meet this new matter, and that the Court, if these new facts were admitted or ascertained, might know how to give judgement. I need not cite authority on this established principle of pleading.

Whatever may be the opinion of the Court on the other points, it must be with us on this.

THORNTON, for defendants in error.

We contend that the conditions of this bond must be construed by the same rules, as if the same matters were expressed in the form of covenants between the parties. The intention of the parties, to be collected from the face of the instrument, is the polar star in the one case as in the other. At the outset here, the general condition is, that Hill " with fidelity, punctuality and attention, and to the best of his skill, judgement and ability, shall conduct himself in his said office, well and truly discharging all its duties," &c. this then is the general outline, or boundary of the contract. The condition then proceeds to enumerate some of the more important duties, " executing the orders of the Directors of said Bank, safely and securely keeping all moneys deposited in his hands, refunding and paying over the same when pre-

JULY, 1827.

Huntsville Bank
v.
Hill, et al.

perly required." Consider the context and grammatical construction, and is it not obvious that, in these particlar conditions, the minds of the parties distinctly reverted to the previous general condition and its qualifications; that they recognized by these particular conditions, certain duties specifically assigned to the Cashier, as belonging to the office which he had undertaken to di-charge; that he was to perform all its duties under the qualifications named, and more particularly those duties which were enumerated; that it was the intention of the parties to extend these limitations to each of the conditions to which they will apply *reddendo singula singulis?* With fidelity and attention, and to the best of his skill and ability, executing the orders of the Directors, safely and securely keeping all moneys deposited; with fidelity and punctuality, refunding and paying over the same when properly required; with fidelity and punctuality, rendering when called on, full and perfect exhibits of the state of the Bank; keeping his accounts in a clear and satisfactory manner. We do not contend that all the limitations are to be applied to each condition. It could not have been the intention of the parties to apply to any one condition, a qualification which from its nature, was inapplicable. By undertaking to perform the duties of the office, the Cashier and his securities for him, undertook for sufficient skill and ability, to conduct its affairs, that he should keep clear and satisfactory accounts, and that when called on, he should render full exhibits of the state of the Bank, and give additional security, &c. From the nature of these conditions, they may be called absolute. But is it so as to safely and securely keeping the moneys? By the charter, the capital stock of the Bank is $500,000; it may issue notes to three times the amount of the capital paid in. If the parties to this bond had considered it as binding the Cashier and his securities, safely and securely to keep all this money at all events, would the penalty of $70.000 have been deemed sufficient. To my mind, the amount of the penalty affords conclusive evidence that as to the safe keeping of the money, the bond was intended merely to secure the fidelity and watchfulness of the Cashier, and not to render him and his securiti's insurers for the safe keeping of an amount which might be more than twenty times as great as the sum in which the obligors were bound. [a] And who

[a] Doug. 382.

provides and controls the means for safely and securely keeping? Is it the Directory or the Cashier who determines in what house, by what kind of vault, bars, locks, &c. the money should be secured? If he had deemed the means provided by them insufficient, had he any power to remove the money to a safer place, or to change the means of protecting it at the house where it was? Such a course on his part, would no doubt have been deemed a violation of the orders of the Directors, and a forfeiture of the bond; and yet, according to the argument of the plaintiff in error, while with fidelity and attention, and the best of his ability, endeavoring to keep the money safely at the place where they have ordered it to be kept, he might be slain at the door of the vault, with sword in hand, defending the money from robbers, if they bore it off, his securities and his estate shall be held liable. Is it possible that it could have been the intention of the parties on the one hand to exact, or on the other hand to give a bond which could have such an effect?

If this construction be correct, the case ends here, for as to the venue of the pleas, that follows the declaration. The pleas aver that he was robbed while in the discharge of his duties, and this could not have been, if the robbery had been by his consent or connivance. Make the most of these last objections of Mr Hopkins, they were available only on special demurrer.

But to return to the construction of the bond: Strike out all the qualifying words of the condition and read it, "shall safely and securely keep all moneys deposited," and what is it but a contract of bailment? Mr Hopkins speaks of classes of contracts, and of the difference between the effect of a penal bond and a contract in another form. I have always understood that the effect of any contract depended on its intrinsic nature, not on the form of the instrument in which it was expressed.

What is a bailment but a delivery of goods in trust, on a contract that the trust shall be faithfully executed by the bailee? This contract may be by deed or by parol; express or implied. [a] The distinctions between a bailment to carry and deliver, and a bailment to keep for the use of the bailee, where the bailor is to pay, and where he is not to pay hire, have not been sufficiently noticed by Mr Hopkins. It is clear enough that the responsibility of the bailee varies according to the nature of the bailment.

[a] 2 Com. Con 233
2 Bl. Com. 451.
Doct. & Student
Croke.

Let this be viewed as an express unconditional con- JULY 1827.
tract, that the Cashier shall safely and securely keep the
money; is it broken if he has been robbed of it by *vis* Huntsville Bank v. Hill, et al.
*major?* It is true in Southcote's case, [a] a bailee having Hill, et al.
goods to be safely kept, and which were stolen by his a 4 Coke 83.
servant, was held liable; and it is said that such bailee is
bound to keep the thing bailed at his peril, although he
should have nothing for his safe keeping: yet this does
not appear to have been the point on which the case was
decided. The authority of this case on this point appears
to have been long since overruled, and even in South-
cote's case, it is said in effect, that if the bailor under-
take to provide the means of safely keeping, take away
the key, &c. the bailee shall not be chargeable for loss
even by theft. The authorities seem to me to shew,
that where property is to be delivered to be safely kept
for a reward, (the contract not coming within the descrip-
tion of a bailment to an innkeeper or common carrier,)
the bailee is bound but to take the same care that a
prudent man would of his own. [b] In some of the modern b Ld. Raym'd.909 Coggs vs Ber- nard. Jones on Bailments 35,41.
cases it has been held, that such bailee is not liable for
loss by theft without his negligence; and from all the
cases, as well as from the reason and principles which
must govern all such contracts, it seems clear that he
cannot be liable if robbed while resisting to the utmost
of his power; and, (as it was competent for us to have
proved under our pleas,) if he had protected the property
from the robbers until he was knocked down, and left
senseless and motionless [c] c 2 Com. Con. 338 and authorities there cited.

If this be the legal effect of the contract, safely and
securely to keep the money; if the terms which the
law annexes to the contract had been expressed in so
many words, would not our pleas, according to the prin-
ciples of the common law, be a good bar to an action
on the penalty of the bond?

Upon the whole matter of the case, from the general
qualifying terms in the condition of the bond, from the
amount of its penalty, and even from the condition
"safely and securely keeping" the money, taken apart
from the rest of the instrument, it seems clear that it
could not have been in the contemplation of the parties
on either side, that the Cashier and his securities should
be bound as insurers against robbery, by whatever force
committed; that they should be bound to make good

27

JULY 1827.

Huntsville Bank
v.
Hill, et al.

the loss, although the money should be taken by a force overpowering him, and all the citizens of Huntsville who might come to his aid.

CLAY on the same side.

As to the want of venue in the pleas, I will, without comment, merely say that at this day the objection is not available, even on special demurrer. [a]

@3 H. Bl'k. 145.

M'KINLEY, for plaintiffs in error.

It may be proper to apprise the gentleman on the other side, more specifically, that this objection is for the want of averment of the time and place of the alleged robbery. The pleas should have shewn that the robbery was committed at a place where the Cashier's duty required him to have the money, and at a time when he should have had it there.

CLAY, for defendant in error, resumed.

The pleas specifically state the day, the same day on which the declaration charges the default to have been committed, and as for the place, it follows the declaration. [b] The pleas aver that the Cashier was robbed while in the discharge of his duty, and if so, it must have been at a place where his duty required him to have the money. They could not have been sustained by proof of a robbery at a place where it was not consistent with his duty that he should have it. Proof that he had it about his person in the street or any other exposed situation, when it should have been in the vault, would have shewn a violation of duty. Robbery *ex vi termini*, imports felonious taking against his will violently and by putting him in fear, and of itself excludes all idea of connivance. [c] The declaration charges as breaches, that on the 13th day of October, 1824, in the county of Madison, the Cashier failed to refund and pay over a certain sum of money, and that he had embezzled the same. The condition of the bond is set out on oyer, and the pleas referring to the condition, aver that on said 13th day of October, 1824, the Cashier, while in discharge of his duty, was violently robbed of this sum of money. Is this to a common intent a precise and sufficient answer to the charge made in the declaration? or was it necessary that the plea should have averred the precise spot, moment of time and all the circumstances of the robbery? I have always understood that a plea in bar should state in general terms matter, which if true, shews that the plaintiff is not entitled to re-

b 1 Ch. Pl. 380, 516. 1 Saund. 8. Note 2.

c 4 Blk. Com. 332.

cover, and that it should state nothing more; that the record should not be encumbered by reiterating what has already been stated, or by all the details of the facts as they are to appear in evidence. What good purpose could such prolixity answer? It might exclude testimony but slightly variant from the description given in the pleas, or if admitted, though variant, might surprise the plaintiffs. If issues to be tried by the jury. were taken on the pleas, the proof must shew that the robbery was committed on the Cashier while in the discharge of his duty, or the pleas would not be sustained. It was as competent for the plaintiffs under this general, as under a more particular statement, to shew that the money was taken while he was acting in violation, and not in discharge of his duty. All questions as to the construction of the contract as to what facts might, or might not shew a discharge of duty, might be as clearly presented to the Court, and the matters of law involved, b. as distinctly stated in a charge to the jury, and as distinctly shewn on the record, as they could have been under the most detailed statement of facts.

As to the construction of the bond, there is a general condition followed by a special enumeration of duties; and from the phraseology, it is shewn that all the special conditions are qualified by the first general condition. Mr Thornton has, I think, conclusively shewn that the nature, and not the form of the contract, determines its construction and effect. These must be the same when expressed in the form of conditions to a bond, as if they had been expressed in the form of covenants between the parties. Here, the conditions all have the same object, the performance of the Cashier's duties; and as the law has been long settled, the restrictive words in the first covenant, extend to all the rest. [a] The first special condition is, " executing the orders of the Directors." Can it be contended that this would have been broken, if he had failed to execute an order, the performance of which was physically impossible? As to the condition which next follows under our pleas, it was competent for us to shew, and we expected to have proved, that it was physically impossible for the Cashier to have prevented the robbery, and safely and securely to have kept the money which was taken. It would seem then, that the general qualifying words, " with fidelity," &c. apply to one of these conditions as much as to the other.

[a] Sug. 411. 3 Lev. 46. 2 Bos. and P. 13.

But it will be unnecessary again to go over the ground taken by Mr Thornton. He has, I think, shewn conclusively, that even where there is a most special undertaking. safely and securely to keep, it is not broken if the loss be occasioned by such means as occasioned this. As to the liability of innkeepers and common carriers, it is clearly distinguished in the books, and distinguishable in principle from this case. Their dealings are with the public at large; the property committed to them, is placed beyond the care and inspection of its owner. They might procure themselves to be robbed almost without the possibility of detection. The bailor entrusting his property, relies on their known unqualified responsibility. They can provide for extraordinary risk, by requiring extraordinary compensation. They may limit their responsibility by special contract, or even by general notice, and the means of safe keeping the property are exclusively under their control. Is it so with the Cashier of a Bank? His undertaking is with the Directory, not with the public at large. The Directory have the exclusive control of the means of safely keeping the money. He may be bound under their orders to receive into the vault any amount belonging to the Bank, or to others who may think proper to deposite there. He cannot demand additional compensation for additional risk. He cannot remove the money to any place which he may deem more safe. He cannot without their orders, even admit a guard into the Bank for its protection. The money must remain there as they may direct, and subject hourly, if they please, to their inspection and control. As to the liability of officers having charge of the money of the government, it depends on the acts of the Legislature, under which they are appointed. Such officers for the most part, have full control of the means of keeping it safely, and their responsibility whatever it may be, can I think, throw little light on the construction of a special and well defined contract, as in this case.

If it had been the intention of the obligees to render the obligors in this bond insurers against all losses of the money, by whatever means occasioned, why has it not been so expressed by a distinct and unequivocal condition or covenant? Why were they satisfied with the condition, "safely and securely keeping all moneys," so plainly referring to the general and restricted condi-

tion which precedes it? In the local history of the coun-
try, it is well known that a short time before the taking of
this bond, money had more than once been stolen from
this Bank. The Directory do not appear to have consi-
dered the then Cashier and his securities bound to make
good the loss; for we have heard of no action on their
bond. If they intended that Hill and his securities should
be insurers against theft and robbery, they could have
been at no loss for words unequivocally expressing such
intention. But did the charter authorize them to take a
bond with such condition?

JULY 1827.

Huntsville Bank
v
Hill, et al.

The Bank can only make such contracts as its act of
incorporation has authorized. It cannot like a natural
person, make all sorts of contracts, or become a general
dealer in the purchase and sale of property. [a] Let the
charter be examined. [b] Admit that incidentally it grants
power to take from its officers, bond and security for the
faithful discharge of their duties. Such power is neces-
sary, in order to carry on its business. But is it also ne-
cessary that it should make its officers insurers of the
money committed to their charge? The Directors of
the corporation seem to have considered that it is not,
for they provide and control the means for locking up the
money, and as has already been shewn, they require of
the Cashier a bond, in an amount totally insufficient
to ensure the sum remaining under his care in their vault.
If such a power then be not necessary for the proper ex-
ercise of the functions of the corporation, where I ask, is
the article in the charter by which it is granted?

[a] 2 Bac. Ab. 33.

[b] Laws Ala. 37.

M'KINLEY in reply.

Let the three first pleas be examined, and can it be
said that they are in form, or in substance sufficient?
They do not deny the facts charged in the declaration,
but allege matters in bar, no where before stated in the
record. If the defendants rely on the fact of the Cashier
having been robbed while in discharge of his duty, surely
the plea should have shewn how, when and where, he was
so robbed. Without such shewing, how can the plaintiffs
fairly meet them? How can they reply, so as to form
an issue which may be submitted to the Court, or to the
jury? If the facts were stated with sufficient certainty
and precision, the plaintiffs might controvert them by an
issue to the jury, or might admit them, and require the
Court to determine whether they amount to such perfor-

mance of duty as was required by the bond. If the
Cashier was robbed of the money in a tavern, at mid-
night, or here in Tuscaloosa, (unless it was shewn that
he had the money here by order of the Directory,) or that
he was robbed after he had been required, and had failed
to pay over the money, must not the Court adjudge that
the condition was broken? So the plea should have ne-
gatived all inference of his consent to the robbery, by
shewing that he did all that he could to prevent it. Whe-
ther the facts amount to a performance of duty, is mat-
ter of construction, to be determined by the Court. Do
the pleas shew matter amounting to a performance of
duty? As they stand, could we, by admitting the facts,
fairly submit to the determination of the Court the law
arising out of them? The authorities relied on by the
gentlemen for the defendants in error, seem to me fully
to sustain us in this part of the case.

But they have relied on the act of incorporation. I
have no doubt but that a full examination of the charter
will shew that the corporation is empowered to take obli-
gations or covenants with the responsibility which we
contend results from the condition of this bond. The
Bank was established for public utility ; to facilitate the
commerce of the country. The citizens of the country
give their property and their labour for its notes. The
value of the notes depends on the safe keeping of
the funds, by which they are to be redeemed. The stock-
holders are individually liable for the whole amount of
notes issued. The Cashier has the custody of all the
money and effects by which the Bank notes are to be
satisfied. Can it be believed that the Directory have no
power to provide for the indemnity of the stockholders,
and to secure the public, by taking such bonds and secu-
rities from the Cashier as may effectually render the mo-
ney safe? that he cannot also be made liable for the
whole amount of funds committed to his charge? In an
action by one holding the notes of the Bank against the
stockholders, could they defend by pleading that the mo-
ney had been taken by robbery from their vault, or that
in this action, they had failed to recover? Is it consistent
with justice, that the Cashier should be discharged, and
yet the stockholders be held liable? But let us see how
the general qualifying words, (as they are called,) in the
first condition of the bond, can be applied to limit the

JULY 1827.

Huntsville Bank.
v.
Hill, et a.

subsequent conditions, " with fidelity, punctuality and attention, and to the best of his skill, judgement and ability, refunding and paying over all money when properly required. In this duty of paying money. it would seem that an ounce of honesty is worth a pound of judgement. So his skill, judgement and punctuality, cannot have much to do with the duty of safely keeping the money. Apply all these qualifying words " with fidelity, punctuality," &c to the condition that he shall make no embezzlement, and can sense be made of the sentence? Apply them to the condition that he shall renew his bond and the connexion will appear as unmeaning. And yet, by the argument by the gentlemen for the defendants, the whole case depends on maintaining this point.

But they argue that the amount of the penalty of the bond shews the restricted nature of its conditions. If, by a breach of fidelity on the part of the Cashier, all the money of the Bank had been lost; if he had treacherously taken the whole of this million and a half of dollars from the vault and applied it to his own use, it would seem that the condition would have been broken, though the securities could not have been liable for more than the penalty. I infer that the Directory could not expect to get security in more than $70,000, and as they superintended the transactions, they considered that it was not probable that more than this amount could be taken by embezzlement, by robbery or by theft, before the loss would be known to them, and they would have it in their power to take other means for the security of the money. This argument then, from the amount of the penalty of the bond, when it is examined can have no weight.

As to the cases cited, to shew the effect of restrictive words in the first of several covenants, it is evident that this principle can apply only where the covenants are all of the same nature. ' But here the duties are of different natures. The parties must have intended something by each of the conditions. Every one of them must be performed. Do the parties, considering the object to be effected, appear to have intended to apply the restriction in the first condition to all the rest? The law as stated in Sugden, (whose treatise has been relied on by the other side,) is, I presume, correctly stated as it was at the time of his writing, and it is there shewn that general covenants will not be cut down unless the intention of the

JULY 1827.

Huntsville Bank
v.
Hill, et al.

parties clearly appears. Test the conditions by these rules: Some of the duties of the Cashier are merely mechanical, others are of a very different nature. The conditions then do not all relate to the same object. As to the paying over all moneys, can skill and ability have any effect? It is evident that the security of the funds was the great object of the bond. The qualifying words which apply to the other conditions according to their nature, can have no effect on this.

The bye-laws of the corporation authorize the appointment of a Cashier. He is then an officer; so the Cashier of the State Bank is an officer. Is he not responsible for these great funds committed to his charge? And is not the Cashier of the Bank of Huntsville also responsible for the funds with which he is entrusted? Or have the Directors who committed them to his care, no power by special contract to make him and his securities responsible for their safe keeping? Their liability is to be determined by the terms of their contract, and not by the doctrine of bailment, as applied to implied contracts. Where is there an instance of an officer constituted by law, considered as a bailee? Is the treasurer of the State a bailee? Are the receivers of public moneys bailees, and bailees too, bound only to take ordinary care? But on the doctrine of bailments, is the case better for the defendants? Is the bailment of the Cashier a bailment of custody or a bailment of feasance? The condition in the bond, to keep and safely to keep, surely mean something. I refer to the law as cited from Jones on Bailment, as shewing the extent of liability under this condition. I ask for the reason of the liability of innkeepers and common carriers even when robbed. I ask if the reason and policy of this rule do not, from the nature of the trust, apply with even stronger force to the case of the Cashier of a Bank.

JUDGE GAYLE delivered the opinion of the Court.

The merits of this controversy seem to rest on the construction of the condition of the bond. The law of bailment arising on the implied contract of innkeepers and common carriers, can throw no light on the extent of the obligation imposed by this contract. The parties here have made the contract for themselves, and must be bound according to their intention appearing on the face of the instrument, and not according to the principles of a contract implied by law. It is a reasonable and well

JULY 1827.

Huntsville Bank
v.
Hill, et al.

established rule of construction, that the restrictive words in the first of several covenants, having the same object, shall be extended to all the covenants, although distinct. But an examination of the condition of this bond will render it apparent that, what in the arguments have been called absolute and distinct undertakings, following the first general condition of the bond, are nothing more than specifications, explaining the duties of the Cashier, and stating almost all of them particularly. These specifications of duty, taken collectively amount to no more than the general condition first stated, " well and truly discharging all its duties," and at the conclusion of the condition, we find a repetition of the same matter, shewing the intention of the parties throughout, in the words " performing promptly and faithfully all and singular, the duties, acts and things required of him in virtue of his office," &c. To this condition or covenant, it cannot be denied that the restrictive words at the commencement, must apply, and yet this condition is here stated as absolutely and distinctly, as the preceding condition for safely and securely keeping all moneys deposited. What did the parties intend by the conditions, " well and truly performing all its duties?" certainly the duties which they themselves immediately afterwards specified as appertaining to the office. If the restrictive words be rejected from this enumeration of duties, the leading and most comprehensive covenant would be controlled, and indeed destroyed by the subsequent less important ones, and we should have to conclude that the parties intended nothing by its insertion.

The form of expression by which these specifications are connected with the first general condition, as by the participles, " executing, keeping, paying," &c. is immaterial, if it appear that these special matters amount to nothing more than what was included in the general condition. But here they are so connected by this form of expression, and the words enumerating particular duties, cannot according to any grammatical construction, convey a distinct meaning, unless taken in connexion with those which first express the general condition. Leave out those words, and how will the condition of the bond read? Now if the said William G. Hill shall well and truly, discharging all its duties, executing the orders of the Directors of said Bank, safely and securely keeping," &c.

28

JULY 1827.

Huntsville Bank
v.
Hill, et al.

To omit them would make the whole matter quite un-meaning.

It is evident from the very nature of the language, that it was not the intention of the parties to apply all the restrictions to each particular duty, but that they are to be applied respectively to each, as from its nature, it may be susceptible of the qualification mentioned. Thus, if any one undertake that with fidelity, and to the best of his skill and ability, he will keep and pay over money, ability is to be applied to the keeping, and fidelity to paying over. This mode, in the structure of sentences, is used by the best writers, and promotes facility and conciseness in writing and speaking.

On the other branch of the argument, the Court have had no difficulty in coming to the conclusion that the pleas are defective in not setting out the place and circumstances of the robbery, so as to shew that Hill was acting in the discharge of his duty as Cashier, when it was committed. [a] The judgement must be reversed and the cause be remanded, for the purpose of giving the defendants an opportunity of amending their plea.

*a* 1 Ch. Pl. 518, 519, 520.

JUDGE WHITE not sitting.