# The State *v.* Houston.

*Action on Official Bond of Tax-Collector.*

1. *Tax-collector's liability on bond, under statutory provisions.*—The statutory provisions prescribing the duties of tax-collectors, requiring them to pay into the treasury the moneys collected as taxes in funds of the same character as received, and prohibiting their use or conversion of the moneys collected (Code, §§ 414, 503, 4265, 4275), are not reconcilable with the theory that the collector is a debtor, and liable absolutely for the public moneys collected, and show that he occupies a relation analogous to that of bailee; yet not of an ordinary bailee for hire, but, on considerations of public policy, charged with the highest degree of care and diligence—such as a very cautious and prudent man exercises in respect to the most important matters.

2. *Same ; loss by robbery.*—If the collector, having exercised the highest degree of care, diligence and vigilance to prevent loss, is robbed of the public moneys by irresistble force, which he could not have foreseen or guarded against, this constitutes a good defense to an action on his official bond ; but, if the money of which he was robbed was not the same money which he had collected, or if he had committed an official default by his failure to pay the money into the treasury as by law required, such robbery would be no defense.

3. *Same ; monthly payments into treasury, and excuse for not making* In requiring the tax-collector to make monthly payments into the treasury, it is not contemplated that he shall carry it to the capital in person ; hence, his personal illness, disabling him to travel, does not excuse his default, unless he was thereby prevented from providing for the safe transmission of the money.

4. *Same ; making payments to county superintendent.*—It is the duty of the tax-collector, having to pay a warrant to the county superintendent, either to carry or to send the money to the county-site, where the superintendent kept his office ; but, if he carried more than the sum necessary to pay the warrant, he would be guilty of negligence.

5. *Declarations of party as evidence for him.*—The declarations of the tax-collector, detailing the circumstances of his robbery, not constituting a part of the *res gestæ*, are not competent evidence for him and his sureties, when sued on his official bond.

[The State v. Houston.]

6.  *To what witness may testify.*—A witness may testify to a person's appearance, as "He looked excited;" but not to the impression made on his own mind, as "He impressed me with the belief that his robbery was real."

7.  *General objection to evidence, part of which is admissible.*—A general objection to evidence, a part of which is admissible, may be overruled entirely.

Appeal from the Circuit Court of Lawrence.

Tried before the Hon. H. C. Speake.

This action was brought in the name of the State of Alabama, against Samuel D. Houston and the sureties on his official bond as tax-collector of Lawrence county; and was commenced on the 9th November, 1883.  The bond was in the penal sum of $20,000, dated and approved August 19th, 1882, and conditioned as follows: "The condition of the above obligation is such, that whereas the above-bound S. D. Houston has been required to give new bond as tax-collector of said county, and has executed this as such new bond; now, if the said Samuel D. Houston shall faithfully discharge the duties of such office during the time he continues therein, or discharges any of the duties thereof, then the above obligation to be void."  The complaint set out the bond, and alleged as a breach that, after its execution and approval, said Houston collected, of the taxes for the year 1882, the sum of $3,305.05, which he failed and neglected to pay over or account for; and claimed this sum, with interest from the 1st May, 1883.  The defendants pleaded performance of the condition of the bond, *nil debet,* and a special plea averring that the collector was robbed of the money by violence and irresistible force.  A demurrer was interposed to the special plea, but was overruled; and the cause was tried on issue joined on all of the pleas.

As to the circumstances attending the robbery, said Houston, testifying as a witness for the defendants on the trial, stated that, on the afternoon of February 13th, 1883, between two and three o'clock, he started from Courtland, on horseback, to go to Moulton, the county-site, for the purpose of paying to the county superintendent the balance due on a warrant drawn in his favor by the State Auditor; that he went alone, and unarmed, carrying about $4,500 inclosed in several envelopes, some of them in the inside breast-pockets of his coat, and two (containing $1,000) in his boot-legs; "that while he was riding along the public road on the mountain, about six miles from Courtland, as he ascended a slight elevation in the road, he saw a man about fifty yards in advance of him, walking near the side of the road in the same direction he was going; that when he had approached within a few steps, the man suddenly wheeled around, attempted to seize the bridle of his horse with his left hand, and presented a pistol with his right; that wit-

37

ness then discovered the man's face was covered with a black mask, and his person with a gum or rubber overcoat; that his horse reared up, almost throwing him, and his assailant commanded him to dismount; that his assailant, as witness dismounted, put his pistol in his left outside pocket, and proceeded to search witness for arms, and, finding that he had none, first took out of witness' side pocket the packet of mortgages," which he was carrying to Moulton for one Pippen for record, " and threw it on the ground, after biting off the end of the envelope, and then took out the packages containing $3,315, which he broke open, and, mounting witness' horse, rode away;" and that he, witness, then walked to the house of one Walker, about a mile or more distant, and got Walker to carry him to Hillsboro.   He stated, also, that the warrant in favor of the county superintendent was drawn in October, 1882, and was for $4,700, but only about $2,700 was unpaid; that the money which he carried, or most of it, was collected in January, 1883; and that he had made no monthly report of the taxes collected in January, because he had been sick for several weeks, and unable to attend to his business.

Said Walker, being examined as a witness for the defendants, was allowed to testify, against the objection of the plaintiff, that Houston, on arriving at his house, "told him he had been robbed about a mile and a half from there, and wanted to go to Hillsboro, so that he could telegraph up and down the railroad, and try to have the robber caught;" and to the admission of this evidence the plaintiff excepted. The witness was allowed to state, also, against the objection of the plaintiff, "that Houston looked very much excited and disordered when he arrived at his house, and impressed him with the belief that his robbery was real; to all of which the plaintiff excepted."
A. W. Bailey, who kept a hotel at Hillsboro, "was allowed to testify, against the objection of the plaintiff, that Houston, when he arrived at his hotel on the night of February 13th, told him he had been robbed, and pulled a package out of his boot-leg, saying there was $1,000 he had saved; and to the admission of this evidence the plaintiff duly excepted. Said witness further stated, against the objection of the plaintiff, that said Houston looked very much prostrated, and impressed him with the belief that his robbery was real; to all of which plaintiff excepted." There were other exceptions to evidence, but they require no notice.

The plaintiff requested the court to instruct the jury as follows: (1.) "The measure of the liability of a tax-collector is his bond; and if he collects money as taxes, and fails to pay it over as required by law, he and the sureties on his bond are liable for it, notwithstanding he has been robbed of it."

[The State v. Houston.]

(2.) "If the jury believe, from the evidence, that said Houston, as tax-collector of Lawrence county, collected $3,305 on the taxes of the year 1882, which he failed to pay over to the State as by law required, then he and the sureties on his bond would be liable for it, with interest from the time he ought to have paid it over, notwithstanding he may have been robbed of it." (3.) "If the jury believe the evidence in this case, they must find for the plaintiff, for the amount of money which Houston, as tax-collector, collected for the year 1882, and failed to pay over to the State, with interest from May 1st, 1883." The court refused each of these charges, and the plaintiff excepted.

The court gave, at the instance of the defendants, the following with other charges: (1.) "If the jury believe, from the evidence, that said Houston left the town of Courtland, for the purpose of going to Moulton, the county-site, to pay over to the county superintendent the money sued for ; and that while travelling the public highway, between Courtland and Moulton, he was suddenly beset by some unknown man, and violently robbed of the money ; and that said robbery was not occasioned by any fault, procurement, or negligence of the said Houston, —then they must find for the defendants." (2.) "If the jury believe, from the evidence, that Houston's failure to pay over the money in suit by the last Saturday in January was due to severe sickness, rendering him unable to travel and attend to business, he was guilty of no default in thus failing to make said settlement on that day." To each of these charges as given the plaintiff excepted.

The rulings of the court on the pleadings and evidence, the charges given, and the refusal of the charges asked, are now assigned as error.

Thos. N. McClellan, Attorney-General, and W. P. Chittwood, for the appellant.—(1.) A tax-collector, or other receiver of public moneys, does not stand in the position of an ordinary bailee, but the condition of his bond imposes on him an absolute obligation to make payment as and when required by law; and on considerations of public policy, neither larceny, embezzlement, nor robbery under any circumstances, can excuse his default. This is the rule laid down by the most approved text-writers and adjudged cases, though some respectable authorities to the contrary may be found.— *United States v. Prescott,* 3 Howard, 560; *Boyden v. United States,* 13 Wallace, 17; *United States v. Morgan,* 11 Howard, 580; *United States v. Dashiel,* 4 Wallace, 182; *United States v. Keehler,* 9 Wallace, 83; *Bevans v. United States,* 13 Wallace, 56; *The State v. Powell,* 29 Amer. Rep. 512; *State v. Moore,* 41 Amer. Rep.

[The State v. Houston.]

322; Murfree on Official Bonds, § 464.  See, also, *McBride
v. The State*, 76 Ala. 51; *State v. Lott*, 69 Ala. 147; *Timber-
lake v. Brewer*, 59 Ala. 10%.  (2.) If the collector occupied
the position of a bailee at all, it was that of a bailee of whom
the highest degree of care and diligence is exacted, as of a
common carrier, who is not excused for the loss of goods by
robbery.—2 Kent's Com. 778; *Boon & Co. v. St. Belfast*,
40 Ala. 184; 41 Ala. 50.  The statute requiring the tax-
collector to pay into the treasury the identical funds received,
was not intended to lessen the degree of his liability, nor to
change his relation towards the State; but was enacted to
guard against a temporary evil, and to prevent speculation in
depreciated currency.  (3.) If robbery can be admitted as a
defense or excuse under any circumstances, it certainly can not
be when it is shown, as here, that the collector was already in
default, by his failure to make monthly reports, and pay over
the money as required by law.—*Falls v. Weisinger*, 11 Ala.
804; *Glover v. Taylor*, 41 Ala. 124; *Newsom v. Thornton*,
66 Ala. 311; *Bevans v. United States*, 13 Wallace, 56.
(4.) The declarations of Houston to Walker and Bailey, as to
the alleged robbery, not being a part of the *res gestæ*, were not
admissible evidence for the defendants.—*Ross v. The State*,
62 Ala. 224; *Birdsong v. The State*, 47 Ala. 68; *Burns
v. The State*, 49 Ala. 370.  (5.) Nor was it permissible for the
witnesses to state that he seemed very much excited and pros-
trated, and impressed them with a belief that the robbery had
actually occurred.—*Johnson v. The State*, 17 Ala. 618; *Gas-
senheimer v. The State*, 52 Ala. 313.

R. O. PICKETT, and EMMET O'NEAL, *contra*.—(1.) The con-
dition of a tax-collector's bond does not impose on him the ob-
ligation to pay absolutely, and at all events, the public moneys
which come to his hands; nor is he the debtor of the State,
bound to pay at all hazards, and having the right to pay in any
kind of funds.  A creditor could not reach and subject the
funds standing in his name as tax-collector, nor would they
pass as assets to his personal representative.  His liability is
that of a bailee for hire, and he is not responsible for a loss by
robbery, or other overruling necessity.—*United States v.
Thomas*, 15 Wallace, 352; *Cumberland v. Pennell*, 69 Maine,
357, or 31 Amer. Rep. 284; *Bank of Huntsville v. Hill*,
1 Stew. 201; *York County v. Watson*, 40 Amer. Rep. 675;
*Glenn v. United States*, 4 Court of Claims Rep. 501; *Whittle-
sey v. United States*, 5 *Ib.* 452; *Malone v. United States*,
5 *Ib.* 486; *Christian v. United States*, 7 *Ib.* 431; *Reynolds
v. United States*, 15 *Ib.* 314; *Browning v. Hansford*, 5 Hill,

[The State v. Houston.]

N. Y. 591. (2.) There is no error in the rulings on evidence. Clark's Manual Crim. Law, §§ 763-4; 12 Ga. 293; 1 Leach, 139.

CLOPTON, J.—In *United States v. Prescott*, 3 How. 578, the action was brought against the principal obligor and his sureties, on a bond given for the faithful performance of his duties as receiver of public moneys. In the condition of the bond there was an express stipulation, that the receiver should well, truly and faithfully keep safely, without loaning or using, all moneys collected or received by him, until ordered to· pay them out by the proper department or officer, and, when so ordered, payment should be promptly made. The defense pleaded was, that the money had been stolen from the possession of the receiver, without fault or negligence on his part, and that he used ordinary care and diligence in keeping the money, and preventing it from being stolen. The court held, that it was not a case of bailment, and, consequently, the law of bailment did not apply; that the liability of the receiver arose out of his official bond, and principles founded .on public policy; and that the defense is not within the condition of the bond. It is said: " The obligation to keep safely the public money is absolute, without any condition, ·express or implied ; and nothing but the payment of it, when required, can discharge the bond." The same ruling was substantially repeated in the following cases : *United States v. Dashiel*, 4 Wall. 182; *United States v. Morgan*, 11 How. 154; *United States v. Keehler*, 9 Wall. 83; *Boyden v. United States*, 13 Wall. 17; and it has been followed, with perhaps some immaterial modifications, by several of the State courts: *Halbert v. Martin County*, 22 Ind. 125 ; *Muzzy v. Shattuck*, 1 Denio, 233 ; *State v. Harper*, 6 Ohio St. 609 ; *County of Redwood v. Tower*, 28 Minn. 45 ; *State v. Moore*, 74 Mo. 413 ; 41 Amer. Rep. 322.

In *United States v. Thomas*, 15 Wall. 337, the suit was on the official bond of the surveyor of customs for the port of Nashville. The defense was, that the moneys in question were seized by the Confederate authorities by the use of force, which the surveyor was unable to resist, and against his will. It was held, that a public officer, having the custody of property in his official capacity, is a bailee, and the rules which grow out of that relation are applicable in the absence of legislation; but by the acts of Congress a more stringent accountability is exacted, the measure of which is found in the condition of the bond, that requires the payment of moneys in their custody, as and when directed, and the performance of which can only be excused by an overruling necessity. Such officers are said to be, under the statutes, " special bailees, subject to special obligations." The rule, that nothing but performance can dis-

[The State v. Houston.]

charge the obligation of the bond, was repudiated. In *Cumberland v. Pennell*, 69 Me. 357 (31 Amer. Rep. 284), the defense to a suit on the official bond of a county treasurer was, that he was suddenly beset and overpowered by robbers, who took and carried away the money, for the recovery of which the action was brought. After reviewing the various cases, Virgin, J., says : "Our conclusion therefore is, that the treasurer's degree of responsibility was simply that which the common law imposed upon him ; that the statute of this State did not extend nor enlarge it; that his official bond does not increase his responsibility, but simply affords security for the performance of his legal obligations ; that if, without fault or negligence on his part, the county treasurer is violently robbed of money belonging to the county, it is a valid defense, *pro tanto*, to an action upon his official bond." The condition of the bond was, " shall well and faithfully attend to the duties of said office, and perform all things required by said office to be performed," during his term of office. A similar ruling was made in *York County v. Watson*, 40 Amér. Rep. 675.

An analysis of the various cases will show, that in some of them the decision turns on the principle, that a public officer, on the receipt of public money, under the statutes, becomes a debtor, and that he and his sureties, by the bond, are absolutely liable for the money, as for a debt.—*Hancock v. Hazzard*, 12 Cush. 112 ; *Muzzy v. Shattuck, supra.* In some others, the decisions rest on the construction of the bond, as a special contract, enlarging the liability of the officer by stipulations to pay without exception or qualification ; and on the rule, that in such case, if performance is possible at the time of the making of the contract, the condition must be performed, unless rendered impossible by the act of God, or by the law, or by the obligee.

The present suit is brought by the State, on the official bond of a tax-collector, to recover money collected by him, which he has failed to pay over. The defense pleaded is, that the tax-collector was robbed of the money sued for, without fault or neglect on his part. The question of the validity of such defense, in the case of a public officer, comes before the court for the first time. Its decision involves the consideration and ascertainment of the relation which a tax-collector sustains to the State in respect to taxes collected by him, and of the measure of his liability, as established by the statutes, and as found in the condition of his bond ; the inquiry keeping in view considerations of public policy. The statute makes it the duty of the tax-collector to pay to the proper receiving officers the identical money collected in payment of taxes. The failure to pay over, under oath, all moneys collected, in the

same character of funds which he receives, is declared to be a misdemeanor; and the conversion of any of the revenues of the State, knowingly, to his own use, or to the use of any other person, is made a felony.—Code of 1876, §§ 414, 503, 4265, 4275. These statutory provisions are irreconcilable with the theory, that the tax-collector becomes, on the receipt of the public revenues, a debtor, and liable as such. The money received for State taxes is the money of the State, and any person receiving it from the officer, for any purpose not authorized by law, with notice of its character, is liable therefor. Under the provisions of the statutes, the relation of tax-collectors, in respect to the public money, is analogous to that of bailees. As said in *United States v. Thomas, supra,* " to call them anything else, when they are expressly forbidden to touch or use the public money except as directed, would be an abuse of terms." At common law, the general rule is, that a bailee is exonerated from liability, if the subject of bailment is lost by inevitable casualty, or by an irresistible force, when he has exercised ordinary care to prevent loss or accident.

The tax-collector is required, before entering upon the duties of his office, to execute a bond with sureties, for double the probable amount of taxes at any one time in his hands, with condition to perform all the duties of his office, which are or may be required by law.—Code, § 403. In *Walker v. Brit. & Guar. Asso.,* 18 Ad. & El. N. S. 277, the action was on the bond of a treasurer of a Benefit Building Society, conditioned that he will faithfully discharge the duties of treasurer, duly obey the direction of the trustees in relation to such duties, and punctually account for all money, bills, notes, securities, goods and chattels, which he shall receive as such treasurer; being also bound, by the rules of the society, to pay over in a given time the same moneys which he received. It was held, that he did not violate his obligation, if, after receiving moneys, and before he has an opportunity of paying them over, he is robbed by irresistible violence, without fault of his own. It was contended, that as soon as the treasurer received any money, he *eo instanti* became a debtor to the society. Lord Campbell said : " We think this must be confined to such moneys received by him as he might use as his own, he being at liberty to pay the debt with other moneys. He can not, in respect to one receipt by him as treasurer, be considered at the same time as bailee of specific, ear-marked moneys, and a debtor to the same amount, with the power of discharging his engagement by payment of an equivalent sum from any source, ·or in any denomination of coin, or in any paper securities which pass as cash." In *Plan. & Mer. Bank v. Hill,* 1 Stew. 201, it was held, in a suit on the bond of a cashier of a bank, with condi-

[The State v. Houston.]

tion that he shall with fidelity, punctuality and attention, to the best of his skill, judgment, and ability, conduct himself in his office, well and truly discharging all its duties, and safely and securely keeping all moneys deposited in his hands, and funding and paying over the same when properly required, that he and his sureties are not chargeable for loss by robbery. These are cases of officers of private corporations; but they are important, as establishing that bonds with such conditions and stipulations do not impose absolute and unqualified liability. We are unable to discover any substantial reason, why the same rule of construction is not applicable to the bonds of public officers, having substantially the same or more general conditions.

The condition of the bond sued on is not expressed in the words of the statute, but the legal effect is substantially the same. "The real intent of the official bond, expressed in the few words in which the statute requires the condition to be written, is, that the collector will with fidelity, skill, and diligence, perform the duties of the office, and keep inviolable the trusts reposed in him."—*State v. Lott*, 69 Ala. 147. While the bond is not an agreement to pay over the moneys at all events, its obligations, when considered in connection with the correlative statutory provisions, is more than a mere security that the duties of the office will be performed with the degree of care and diligence required of an ordinary bailee for hire. The manifest intention of the statutes, providing for the collection of the taxes and safe-keeping of the money, imposing penalties for its unauthorized use, and for a failure to make returns and pay over as and when required by law, and requiring bond with sureties for the faithful performance of their duties, is to hold tax-collectors to a very strict accountability. While the bond may be regarded as a special contract, it does not undertake to define or prescribe what is a faithful discharge of duties. It is a special contract, guaranteeing the faithful performance of duty, as fixed and measured by the law. The perception of the degree of responsibility will be contracted and inadequate, if restricted within the limits of the law of ordinary bailment, to the exclusion of considerations of the peculiar position of the collector as a public officer. Selected by the elective or appointing power, the law devolves on the tax-collector duties to be performed, and trusts to be executed, which materially affect the public weal and the due administration of government. The degree of care and vigilance exacted should be regarded as commensurate with the importance of the duties, and the urgency of the demand and exigency of prompt and faithful discharge.

[The State v. Houston.]

From the course and character of the, legislation, construed on principles of public policy, the only reasonable inference is, that it was the intention to exact of officers charged with collecting, keeping, and paying over the public revenue, the highest care, vigilance and diligence known to the law, such as a very prudent and cautious man exercises in respect to the most important matters. Our conclusion is, that, while the official bond does not impose absolute and unconditional liability, the statutory provisions, and considerations of public policy, enlarge the degree of responsibility beyond that of a mere bailee for hire; and if, having observed the highest care, vigilance, and diligence to prevent loss, the collector is robbed of money belonging to the State by irresistible force, it constitutes a valid defense to an action on his bond for the recovery of such money. We say *money belonging to the State*, for, if it appears that the specific funds received by the collector have been used or changed for any unauthorized purpose, he becomes *eo instanti* a debtor, and he and his sureties are bound to absolute payment, as for a debt. In such case, subsequent robbery of money substituted for the amount misused, is no defense. The robbery must be of money, the property of the State. We purposely limit the decision to the case of irresistible force.

The collector can not be said to be without fault or neglect, if there has been previously an omission, without exonerating cause, to discharge any duty, the performance of which, as and when required, would have prevented the money from being subject to loss by robbery. If there was such failure of duty, the condition of the bond was then broken, and such default of the collector, co-operating with the robbery, contributed to the loss of the money.—*Bevans v. United States*, 13 Wall. 56; *Halliburton v. United States*, 13 *Ib.* 63. The warrant in favor of the county superintendent of education, to pay which the collector was taking the money when he was robbed, had been drawn, and in the hands of the superintendent, since the previous October. It was the duty of the collector to pay the warrant, as and whenever he received money legally applicable to its payment. Moreover, the collector is required, by the last Saturday in each and every month, to pay the State treasurer all the taxes due to the State; and a failure to do so, without good and sufficient cause, to be decided by the governor, subjects him to suspension from the further performance of the duties of his office.—Code, § 418. No decision was made by the governor, and, in consequence, it is unnecessary to consider the effect of such decision, if one had been made. The policy of requiring monthly payments is, that the State may promptly receive funds to meet current demands,

[The State v. Houston.]

and its financial engagements, and to prevent the accumulation, at any one time, of a large sum in the hands of the tax-collectors, which might tempt to conversion or embezzlement. The evidence tends to show, that an amount of money, exceeding the sum of which he was robbed, was in the safe in which it was kept, prior to and on the last Saturday in January preceding, which was not paid on the warrant, nor forwarded to the treasurer of the State. The statutes do not contemplate that the collector shall make monthly trips to the capitol for this purpose. The taxes may be sent or forwarded. It is incumbent upon the collector, that he may be acquitted of fault or neglect, to show that he had no opportunity, after the money was received, to pay over the taxes, either on the warrant, previous to the robbery, or to the treasurer by the time required by law. An overruling necessity may be regarded as sufficient to exempt him from fault or neglect, otherwise arising from an omission to perform those duties; but sickness, which disables to travel, and to attend personally to business, is not, of itself, sufficient. It must be further shown, that by reason of the sickness, or from other causes, he was unable to provide a safe transmission of the money to the proper receiving officers. Less than this does not answer the requirements of his strict accountability.

The court instructed the jury to find for the defendants, if they believed that the collector was actually robbed; that he was in the discharge of his duty, and exercised both care and prudence in the management and safe-keeping of the money, as a prudent and a reasonable man would in the management of his own funds, and made such resistance to the robbery as a prudent man would. The charge is in conflict with the foregoing rules, in respect to the stringency of accountability; withdraws from the consideration of the jury the evidence tending to show previous omissions of duty, and, when considered in reference to such evidence, ignores essential elements of the defense.

We are of opinion, that under the circumstances it was the duty of the collector, either to carry or send the money to the county-site, where the superintendent kept his office, provided the necessity to do so was not caused by previous failures to discharge his duty. But it would be negligence in keeping the money, if he carried more than was necessary to pay the balance due on the warrant. Whether it was negligence to fail to provide means of resistence, is a question to be determined by the jury on the circumstances proved, and on the probability of an attempt at robbery, if it were known or suspected that he was carrying so large an amount of money; the legal test being, would a very prudent and cautious man have

provided means of protection and resistance under the same circumstances.

It is unnecessary to designate specifically the other charges given and refused, which are in conflict with the principles expressed in this opinion. A comparison will readily discover wherein they conflict.

The statements of the collector to the witnesses Walker and Bailey, as to the facts of the robbery, are narrations of a past transaction, and too remote to constitute a part of the *res gestœ*, and should have been excluded.—*Ala. G. So. R. R. Co. v. Hawk*, 72 Ala. 112. A witness may testify that a person was excited, but not to the impression made on his mind. But the objection was to the entire evidence, part of which is admissible. Such objection may be properly overruled.

Reversed and remanded.