[Ex parte Thompson.]

# *Ex parte* Thompson.

### Application for Mandamus.

1. *Approval of official bonds; exercise of judicial power.* — The statutes of this State, in regard to the approval of official bonds, confer upon the officers intrusted with that duty judicial, not ministerial power, the exercise of which cannot be revised by *mandamus.* (*Ex parte Harris, ante,* p. 87, reëxamined and reaffirmed.)

2. *Power; when judicial.* — A power is judicial, or in its nature judicial, when it involves the exercise of judgment and discretion; is to be exercised only in an ascertained event and on the concurrence of particular facts, the existence of which must be determined by the officer intrusted with the execution of the power.

3. *Semble,* that *mandamus* would lie if the refusal to approve an official bond proceeded from mere arbitrariness, whim, or caprice.

THIS was an application for *mandamus* to compel the judge of the ninth judicial circuit (Hon. J. E. COBB) to approve relator's official bond as probate judge of Macon county, which the circuit judge had refused to do, because he deemed the sureties insufficient for reasons stated in his return, which it is not necessary to set forth here.

RICE, JONES & WILEY and GUNN & PAINE, for petitioner.

STONE & CLOPTON, ARRINGTON & GRAHAM, HOLT & ABERCROMBIE, *contra.*

BRICKELL, C. J. — The judge of the ninth judicial circuit, upon the address of four members of the court of county commissioners of the county of Macon, required the relator to give an additional bond as judge of probate of said county. The relator tendered an additional bond, which the judge refused to approve, because he deemed the sureties insufficient. A *mandamus* to compel him to approve is moved for by the relator.

Unless the court departs from the decision made at the present term in *Ex parte George E. Harris,* the application must be refused. We have carefully reconsidered that decision, and have reëxamined the authorities on which it rests, and many others, some in harmony, others conflicting with it. The questions decided in that case, so far as they affect this, are, that the approval of official bonds, under the statutes of this State, is the exercise of judicial, not of ministerial power; and that *mandamus* will not lie to revise the exercise of the power. We cannot attain any other conclusion.

It may not always be easy to ascertain the real character of a statutory power intrusted to a judicial or ministerial officer. When the power is clearly defined and enjoined, does not involve the exercise of discretion or judgment, and no alternative

VOL. LII.

[Ex parte Thompson.]

is left to the officer charged with its execution ; when he must act without inquiry, and without evidence, and the mode of action is expressly declared, the power is purely ministerial. When, however, the power involves the exercise of judgment and discretion ; when it is to be exercised only in an ascertained event and on the concurrence and existence of particular facts, and the officer charged with the execution of the power must determine whether the event has arisen, or the facts exist requiring its exercise, then the power is judicial, or in its nature judicial.

A reference to some of the cases in which *mandamus* has been awarded, and some in which it has been refused, will aid in determining the nature of the power of approving official bonds as prescribed in the statutes of this State, and whether the writ is a proper remedy to revise the action of the judge intrusted with the power, in granting or withholding approval. The governor of the State was required, when a railroad company complied with certain terms expressed .in an act of the legislature, to draw his warrant on the treasury in favor of the company for a certain sum. The terms were complied with, but the governor, supposing the act was modified or repealed by a subsequent statute, refused on application to draw the warrant. This court holding the first act was a legislative grant to or contract with the company, incapable of repeal or modification without its consent by any subsequent statute, and that the duty imposed on the governor was merely ministerial, which could as well have been devolved on a subordinate or inferior officer, awarded a *mandamus* compelling him to draw the warrant. *Tenn. & Coosa R. R. Co.* v. *Moore*, 36 Ala. 371. It will.be observed, that in the case no question of fact was presented. The facts were uncontroverted, and there remained no matter involving judgment or discretion, and no alternative for the governor to adopt in the exercise of this judgment. The statute was imperative ; he should do the mere manual, ministerial act of drawing a warrant for a specific amount. An act of Congress authorized the solicitor of the treasury to adjust on principles of equity claims preferred against the United States, and directed the postmaster general to credit the parties with the sum ascertained by the solicitor to be due them. A *mandamus* was awarded to compel the postmaster general to perform the mere clerical, ministerial duty of entering on the books of his department a credit of the sum ascertained by the solicitor. *Kendall* v. *U. S.* 12 Pet. 524.

In *Life & Fire Ins. Co.* v. *Wilson* (8 Pet. 291) a *mandamus* was awarded to compel a judge to sign a judgment which had been rendered by his predecessor in office, his signature being necessary under the local law, the court saying, " the act of

signing the judgment is a ministerial and not a judicial act."
These are not extreme cases, and are selected only to show
the character of the act, — the nature of the power it involves
— the performance of which has been enforced by *mandamus*.
The exercise of judgment or discretion was excluded; there
was a mere naked, well-defined ministerial duty to be per-
formed.

In *Ex parte Echols* (39 Ala. 698), an application was made
to this court to compel the speaker of the House of Representa-
tives to send to the Senate a bill, averred to have passed the
House, which he refused to send, because he did not deem it
had received the number of votes necessary to its passage ; all
consideration of the jurisdiction of the court was waived, and
the writ refused, upon the specific ground that the speaker, in
his refusal, was exercising power in its nature judicial, not
ministerial.   The court said : " It seems to be held by all the
authorities, that the writ of *mandamus* can only issue to some
officer required by law to perform some mere ministerial act,
or to a judicial officer to require him to take action ; but not
in a matter requiring judgment or discretion to direct or con-
trol him in the exercise of either."   The supreme court of the
United States have uniformly announced this rule.   The acts
of Congress intrusted the superintendent of public printing
with the distribution to the printers of the Senate and of the
House of all matter ordered to be printed, requiring, when any
document was ordered to be printed, that the printing should
be done by the printer of the house first ordering it.   A *man-
damus* was sought to compel the superintendent to deliver a
particular document to the printer of the House, on the ad-
mitted fact that the House first ordered its printing.   The
*mandamus* was refused.   C. J. TANEY, reviewing the former
decisions of the court, said : " The rule to be gathered from all
of these cases is too well settled to need further discussion.   It
cannot issue in a case where discretion and judgment are to be
exercised by the officer, *and it can be granted only where the
act required to be done is merely ministerial*."   *U. S.* v. *Sea-
man*, 17 How. 225.

All the authorities, however conflicting they may be, profess
to proceed on the rules announced in these cases.   A judicial
officer approving an official bond under the laws of this State
exercises a function more important, delicate, and responsible
than that involved in many of the authorities in which the
power has been declared judicial.   The interests of a commu-
nity depend on the fidelity with which he discharges the duty.
The probate judge has the care of the estates and interests of
persons not *sui juris*, the security of which rests largely on the
sufficiency of the official bond, to which they may resort in

the event of his misfeasance or malfeasance. The sufficiency of such bond can be known to the approving officer only from evidence. He must, examine witnesses, and determine from their testimony whether the obligors in the bond are sufficient as sureties. I can conceive of no case in which an officer is compelled to hear evidence and to exercise judgment on such evidence, that the power, the duty he exercises, is not, to say the least of it, in its nature judicial.

If, as we must conclude, the approval of an official bond involves judicial power, then no principle of law can be regarded as better settled than that its exercise cannot be revised on *mandamus*. This writ has in it no revisory capacity; it is wholly compulsory. The supreme court of the United States say: " We are not aware of any case when a *mandamus* has issued to an inferior tribunal commanding it to reverse or annul its decision, where the decision was in its nature a judicial act, and within the scope of its jurisdiction and discretion." *Ex parte Secombe,* 19 How. 9 ; *United States* v. *Guthrie,* 17 How. 304; *Ex parte William Many,* 14 How. 24; *United States* v. *Commissioner,* 5 Wall. 523.

It is evident that the statutes of this State are framed with the purpose of a rigid execution of official bonds from public officers having ministerial duties to perform, affecting the public revenues or the pecuniary interests of the citizen, sufficient for indemnity against official misfeasance or malfeasance. No public officer is intrusted with such large and unchecked power over these as the judge of probate. The danger to be guarded against is not his oppression, in the strict enforcement of the statutory powers conferred on the grand jury, or the court of county commissioners, intended to compel him to give and keep good and sufficient official bonds, but that there will be a want of promptness and indifference in the exercise of these powers. He has more ample remedies to redress any injury he may sustain from an abuse of these powers than the public has to enforce their exercise.

We are not unmindful of the argument, pressed with so much force by the counsel for the relator, that a public officer may be greatly wronged by the mere capricious or arbitrary refusal of the judge to approve his official bond, if such refusal is not revisable. In every power is wrapped up a capability of abuse. The main security against its abuse rests often only in the power of public opinion — the official obligation and responsibility of the officer in whom it resides. There are many powers, the exercise of which may be productive of greater private injury than can follow a refusal to approve an official bond, depending only on judicial discretion, and not the subject of revision. A new trial may be refused when life or liberty is

in jeopardy; the refusal may be erroneous, in gross violation of law, and there is no jurisdiction to revise. A continuance may be wrongfully, capriciously, it may be corruptly granted, until by the lapse of time testimony is lost, and the wrong is allowed to prevail when the right could have been established; and yet there is no power of revision. · If the case should ever occur in which it is made to appear that the officer charged with the approval of an official bond has been so insensible to his official responsibilities as to withhold approval, from mere whim or caprice, or arbitrarily, we will not say a remedy by *mandamus* may not exist, — that then the refusal would not be in legal effect a mere refusal to exercise his power. *Commissioners of Poor* v. *Lynch*, 2 McC. 170 ; *Arberry* v. *Beavers*, 6 Texas, 457. When, however, it is only error which is imputed to the officer, a *mandamus* cannot be awarded to correct it.

It is due to the respondent to say, that assuming as true the facts stated in his return, in justification of the refusal to approve the additional bond tendered by the relator, he would have erred if he had not refused.

The *mandamus* must be denied.