NORTHERN PACIFIC RAILWAY COMPANY v. JOHN OWENS
and Others.[1]

May 9, 1902.

Nos. 13,044—(161).

**Public Officer—Payment of Money.**

> Where a statute, either in direct terms or from its general tenor, imposes the duty upon a public officer to pay over moneys received and held by him in his official capacity, the obligation thus imposed is an absolute one, unless it is limited by the statute imposing the duty, or by the conditions of his official bond. In respect to such liability there is no distinction between public and private funds.

**Clerk of Court—Loss of Deposit in Bank.**

> The defendant herein received in his official capacity, as clerk of the district court, money paid into court in condemnation proceedings, which he deposited, in his name as clerk, in a solvent bank, which afterwards failed, whereby the money was lost without his fault. *Held,* that he and the sureties on his official bond are liable for such loss.

Action in the district court for St. Louis county upon the official bond of defendant John Owens, as clerk of the said court, to recover from defendant and his sureties $690, paid into court in condemnation proceedings and received by defendant Owens in his official capacity. The case was tried before Dibell, J., who found in favor of defendants. From an order denying a motion for a new trial, plaintiff appealed. Reversed, and judgment ordered for plaintiff.

*J. L. Washburn* and *W. D. Bailey,* for appellant.

*L. C. Harris* and *Davis, Hollister & Hicks,* for respondents.

START, C. J.

The material facts of this case necessary to be here stated are these: John Owens, hereafter designated as the "defendant," was clerk of the district court of the county of St. Louis for four years; his term ending January 2, 1899. Upon assuming the duties of the office, he gave a bond as principal, with his codefendants as sure-

[1] Reported in 90 N. W. 371.

ties, conditioned for the faithful discharge of his official duties. There was paid to him by his predecessor $2,789.75, which had been paid to the clerk of the court in certain pending condemnation proceedings, pursuant to the provisions of G. S. 1894, § 2649. He accepted the money in his official capacity, and deposited it in the Marine National Bank of Duluth, in his name as clerk of such court. He never obtained any order of the court designating the bank as a depositary of such money, nor was any such order ever made. Subsequent to the making of this deposit, and before the court ordered its payment to the party entitled to it, the bank became insolvent, and went into the hands of a receiver in November, 1896. The receiver paid to the defendant 65½ per cent. of the sum so deposited. The amount so paid he turned over to his successor in office, and no more. Such proceedings were thereafter had in the condemnation proceedings that on February 27, 1900, the court ordered $2,000 of the sum originally paid to the defendant to be paid to the plaintiff; but the then clerk, having received only $1,310 from the defendant, paid over only that amount, leaving $690 unpaid. This balance the plaintiff duly demanded of the defendant, who refused to pay it. Thereupon this action, by leave of the court, was brought upon the defendant's official bond, to recover the balance of the fund which was lost by the failure of the bank. At the time the deposit was made the bank was solvent, and in making it, and permitting it to remain therein, the defendant acted in good faith, and with reasonable care and diligence. The trial court, as a conclusion of law from these facts, directed judgment for the defendants upon the merits. The plaintiff appealed from an order denying its motion for a new trial.

The sole question presented by the record for our decision is whether a clerk of the district court of this state, and the sureties upon his official bond, are liable for money, whether belonging to the public or to individuals, deposited with him in his official capacity, when it is lost without fault or negligence on his part. Or, in other words, is a clerk of the court absolutely liable for funds deposited with him in his official capacity?

The liability of public officers at common law for funds deposited with them was substantially that of a bailee for hire, and they

were not liable for the loss of such funds if it occurred without their fault. This, however, is not the measure of the liability of such officers and the sureties on their official bonds in this state. The question of the liability of public officers for funds deposited with them in their official capacity is one of first importance. The decisions of the courts of the country are not uniform upon the question. A majority of the courts which have passed upon the question hold, upon grounds of public policy, and upon a consideration of the provisions of the statute and the conditions of the official bond in each particular case, to the doctrine of the absolute liability of such officers for the loss of public money received by them in their official capacity. Other able courts, however, have followed the common-law rule. We find it unnecessary to enter upon any general discussion of the question, for this court thirty years ago adopted the rule of absolute liability, and has ever since enforced it. The only doubtful questions in this case are whether, in view of the provisions of the statutes relating to the duties of the clerk of the district court, the rule applies to such officer, and, further, if so, whether it extends to private funds deposited with him in legal proceedings.

1. The first question is to be answered by a review of the decisions of this court upon the subject and the reasons therefor. The first case on this subject was County Commrs. of Hennepin Co. v. Jones, 18 Minn. 182 (199). It was an action upon a county treasurer's official bond, conditioned that he "shall * * * safely keep and faithfully pay over according to law all moneys which come into his hands," which were the conditions provided for by statute. The defense was that the funds which the treasurer failed to pay over were stolen from the county safe without any fault on his part; but the court held this to be no defense, for the reason that the treasurer, by reason of the conditions of his bond and the provisions of the statute, was absolutely liable for all public money deposited with him. The court, however, discussed generally the question of the liability of public officers for money deposited with them in their official capacity, as affected by considerations of public policy, and by implication, at least, approved the doctrine of the absolute liability of public officers for public funds, based

upon considerations of public policy, as laid down in the case of U. S. v. Prescott, 3 How. 578.

The next case was County Commrs. of McLeod Co. v. Gilbert, 19 Minn. 176 (214), which was an action, not upon an official bond, but one to recover from the county treasurer certain taxes which he had collected, and failed to pay over or to account for. The defendant admitted the receipt of the money, and alleged as a defense that it was stolen from the county safe without any neglect or fault on his part. This plea the court, following the Jones case, held to be no defense, for the reason that the same degree of responsibility enforced in that case rested upon a county treasurer, independent and outside of his liability upon his official bond. The statute then in force was to the effect that the treasurer should pay over all moneys received by him, and account therefor according to law. The court stated that it had not referred to considerations of public policy, as affecting the responsibility which should be exacted from public officers for money held by them as such, for the reason that it was unnecessary to add anything to what was said on the point in the first case.

The third case was Board of Co. Commrs. of Redwood Co. v. Tower, 28 Minn. 45, 8 N. W. 907, which was an action upon the defendant's official bond as county treasurer, conditioned, as provided by the statutes, for the faithful execution of the duties of his office, and the safe-keeping and paying over according to law of all moneys which come into his hands. The alleged breach was that the defendant had failed to pay over certain money belonging to the county. The answer alleged that the money was received on a day named too late to be deposited in the county depositary, and was placed in the county safe, from which it was stolen without any fault of the defendant. The court held that the alleged facts had no tendency to relieve the treasurer from liability; citing the Jones and Gilbert cases, without comment.

Next in order was Board of Education v. Jewell, 44 Minn. 427, 46 N. W. 914, which was an action upon the official bond of the defendant, as treasurer of an independent school district, for money received by him, but never paid out by him, nor delivered to his successor in office. The defense was that the money was locked in

an iron safe in his place of business, from which it was stolen by burglars without his fault. The statute then in force (G. S. 1878, c. 36, § 107) relating to the bond and duties of such treasurer required him to execute a bond "conditioned for the faithful discharge of his duties as treasurer." It also declared that the treasurer should receive and pay out upon the order of the board all moneys belonging to the district, and pay to his successor in office, upon demand, all money in his hands belonging to the district. His bond, in addition to the condition required by the statute, also provided that he "shall, at the expiration of his term of office, pay over to his successor in office all moneys remaining in his hands as treasurer." The court held that the fact that the money was stolen from the defendant without his fault was not a defense to the action. The opinion, by Justice DICKINSON, is an able one, and fully discusses the question upon principle and authority, and cites not only the decisions of this court, but the leading cases in other jurisdictions. The conclusion reached was that "where the statute in direct terms, or from its general tenor, imposes the duty to pay over public moneys received and held as such, and no condition limiting that obligation is discoverable in the statute, the obligation thus imposed upon and assumed by the officer will be deemed to be absolute, and the plea that the money has been stolen or lost without his fault does not constitute a defense to an action for its recovery." This conclusion was rested not only upon the terms of the statute and the conditions of the bond, but upon familiar considerations of public policy.

The last case was State v. Bobleter, 83 Minn. 479, 86 N. W. 461, which was an action on the defendant's bond as state treasurer for money received in his official capacity, and not paid to his successor, because it had been lost by the failure of certain state depositaries in which it was deposited. His bond was conditioned for the faithful discharge of the duties of his office, and the statute imposed upon him the duty of safely keeping the public money, and paying it out as directed by law. This court, approving U. S. v. Prescott, supra, expressly recognized and enforced the rule of the absolute liability of public officers for money in their hands as such, for the reason that the statute (G. S. 1894, § 344, subd. 2) pro-

viding for state depositaries expressed the purpose not to impair such liability.

The conclusion which we draw from this review of our own decisions is this: It is the settled law of this state that, where a statute, either in direct terms, or from its general tenor, imposes the duty upon a public officer to pay over moneys received and held by him in his official capacity, the obligation thus imposed is an absolute one, unless it is limited by the statute imposing the duty, or the conditions of his official bond.

This brings us to the question whether the rule applies to a clerk of the district court. Counsel for the defendant concede that it was his official duty as clerk to receive the money in question, and turn it over to his successor, if it had not been lost without his fault. But it is insisted that, to make him an insurer of the fund, he must have contracted to be one, in effect, in his bond, or the statute under which the bond was given must have so provided, and that neither his bond nor the statute imposes upon him the liability of an insurer of the fund.

The statutory condition of the bond of a clerk of the district court is precisely the same as in the bond of the state treasurer and that of the treasurer of an independent school district. The statutory condition in each case is that the officer "shall faithfully discharge his official duties." This does not imply any limitation of the liability imposed by law upon such treasurer or clerk for a failure to discharge any of his official duties. The question, then, is narrowed to the inquiry whether the statute relating to the duties of clerks of the district court, either in direct terms or from its general tenor, imposes upon them the duty to pay over money received by them in their official capacity. The statutory pro-visions as to the duties of such clerks touching the care and pay-ment of money deposited with them are meager. We have no statute which specifically requires him to pay over such money on the order of the court, or, if no such order is made during his term, then to his successor in office. The clerk of the district court, how-ever, unless a court depositary has been appointed, is, by the set-tled practice of the court, recognized by the statute as the official

custodian of all moneys, whether public or private, paid into court, and bound to safely keep them, and pay them out on the order of the court, or deliver them to his successor. It is provided by G. S. 1894, § 856, that:

"Every clerk of the district court, before entering on the duties of his office, shall execute a bond to the board of county commissioners, with two or more sureties, approved by said board, in the penal sum of one thousand dollars, conditioned for the faithful discharge of his official duties, and take and subscribe the oath required by law; which oath and bond shall be filed and recorded in the office of the register of deeds: provided, that the judge of the district court in any county may order all moneys, paid into court to abide the result of any legal proceedings, to be deposited, until the further order of said court, in some duly-incorporated bank or banks, to be designated by the court as such depositary; or said judge, on application of any person or corporation paying such money into court, may require said clerk to give an additional bond, with like effect as the bond provided for in this section, in such amount as said judge shall deem sufficient. That the clerk of said district court shall be entitled to receive a commission of one per cent. on every dollar for receiving and paying over money which may be deposited with him, to wit: one-half of such commission for receiving, and the other half for paying, the same. Said per cent. to be paid by the party depositing the money."

Sections 2649, 2650, G. S. 1894, provide that in condemnation proceedings the railroad company, if in doubt as to the party entitled to the damages, or any portion thereof, awarded for land taken for its railway, may, upon filing an affidavit to that effect with the clerk of the court in which the proceedings are pending, pay the amount thereof into court, and be released from further liability in the premises. And when the court finally determines to whom the fund belongs, it must be paid upon its order to them. Again, in actions for partition of real estate, if a sale is ordered of the premises, and there is any question as to whom any portion of the proceeds thereof belongs, the clerk of the court must receive, hold, and invest, subject to the order of the court, such portion for the use and benefit of the parties entitled thereto. G. S. 1894, § 5809. So, also, in an action where there are adverse claimants to money which the plaintiff seeks to recover from the defendant, he may pay the amount thereof to the clerk of the court. Laws

1895, c. 329. A surety on a forfeited recognizance may pay the amount thereof to the clerk of the court, and be discharged from further liability. G. S. 1894, § 7158. And money accepted by a magistrate in lieu of a recognizance, where the defendant is held to bail to await the action of the grand jury, must, it would seem, be delivered to the clerk of the district court, as a substitute for a recognizance. G. S. 1894, §§ 7149, 7156.

It is clear from the general tenor of these statutes that they impose upon the clerk of the district court the duty of receiving, keeping, and paying over on the order of the court, or to his successor in office, all money paid into court or to him. We therefore hold that the rule of absolute liability of public officers and the sureties on their official bonds for moneys received by them in their official capacity, as declared and enforced in this court in actions against state, county, and school-district treasurers, respectively, applies to clerks of the district court and the sureties on their official bonds.

2. Does this rule extend to private funds; that is, funds received by a public officer by virtue of his office, which are ultimately to be paid by him to private parties? It is urged by counsel for one of the sureties in this case that the rule is limited to strictly public funds, and that, in any event, the liability of the officer in this case is only that of a bailee for hire. The cases of People v. Faulkner, 107 N. Y. 477, 14 N. E. 415, Wilson v. People, 19 Colo. 199, 34 Pac. 944, and Fairchild v. Hedges, 14 Wash. 117, 44 Pac. 125, tend to support this contention. But on the other hand the cases of Morgan v. Long, 29 Iowa, 434, Wright v. Harris, 31 Iowa, 272, Havens v. Lathene, 75 N. C. 505, and State v. Gatzweiler, 49 Mo. 17, do not recognize the distinction claimed. The cases in this court which we have cited do not suggest any distinction between public and private funds. This is not specially significant, for the subject-matter of each of those cases was public money.

Upon principle, we are unable to make any distinction between public and private funds in the hands of a public officer, as to his liability therefor. In both cases the funds are paid to the officer in obedience to the mandate of the statute, which makes no distinction between them, and imposes the same duty as to each. The

same bond secures both in the same terms. Can it be true that a county can recover on such a bond the amount of a forfeited recognizance lost by the clerk without his fault, but that money received by him in his official capacity for a private party, and so lost, cannot be recovered by an action on the same bond? It is not the character of the fund, but the statute and considerations of public policy, which impose the liability upon the officer. The same considerations of public policy which require that public officers who receive public money be held to a strict measure of responsibility therefor apply just as forcibly to private funds officially received by them, for private property is just as sacred as public property. This is especially true of money paid to the clerk of the district · court, as in this case, in condemnation proceedings. The money in such a case is not deposited by its owner. He is not consulted in the premises. On the contrary, his land is taken for a public purpose without his consent, and the money, which is a substitute therefor, is placed in the official custody of the clerk, to be paid to the owner whenever (it may be after years of litigation) the court decides that he is entitled to it. Surely a wise public policy demands in such a case, if it does in any case, that the official custodian of the money should be held to a strict measure of responsibility therefor. We hold, therefore, that a public officer is liable for the loss of private funds received and held by him in his official capacity whenever he would be liable for the loss of public funds under the same circumstances, for in respect to his liability for the loss of money in his official custody there is no distinction between public and private funds.

It follows that the order herein appealed from must be reversed, and the case remanded with directions to the district court to amend its conclusions of law to the effect that the plaintiff is entitled to recover from the defendants the amount claimed in its complaint, and cause judgment to be entered accordingly. So ordered.

LEWIS, J. (dissenting).

The decision of the majority is based upon the following principle: Where a statute, either in direct terms or from its general

tenor, imposes the duty upon a public officer to pay over moneys received and held by him in his official capacity, the obligation thus imposed is an absolute one, unless it is limited in the statute imposing the duty, or the conditions of his official bond. This proposition is taken from the opinion in Board of Education v. Jewell, 44 Minn. 427, 46 N. W. 914, with the addition of the words "or the conditions of his official bond." As I understand the decision in the Jewell case, the court had no intention of extending the liability of the officer and his sureties, unless the statutory provisions expressed obligations greater than those imposed by the common-law rule. This is evident from the authorities upon which the decision was based. The leading case was U. S. v. Prescott, 3 How. 578, where the officer was the receiver of public moneys, and the condition of his bond was to well, truly, and faithfully keep safely the moneys placed in his hands. The court held that by the use of this language the officer had entered into an absolute contract to safely keep the moneys, and that considerations of public policy required the language used to be strictly construed against him, because he had voluntarily assumed the responsibility. This construction was followed in U. S. v. Dashiel, 4 Wall. 182, and Boyden v. U. S., 13 Wall. 17. In Inhabitants v. Hazzard, 12 Cush. 112, the conditions of the bond were to faithfully collect, account for, and pay over, to which the reasoning of the Prescott case was applied.

Of the other cases cited, it may be said that in each instance either the statute or the bond specifically provided that the officer was bound to account for and pay over the moneys, upon proper warrants, or to his successor in office; and the courts, in applying the doctrine of the Prescott case, expressly put it upon the ground that the common-law rule was abrogated by the terms of the statute, and that the officer had voluntarily accepted the conditions thus defined. The Minnesota cases cited in support of the decision in the Jewell case were to the same effect. In County Commrs. Hennepin Co. v. Jones, 18 Minn. 182 (199), the statute and the bond both required the treasurer, during his term of office, to "safely keep" and faithfully "pay over," according to law, all moneys which came into his hands. In the language of Justice

BERRY, the rule is thus stated: "The very words used in bonds of this kind, viz., that the obligor shall 'safely keep' the moneys, seem to carry the idea that the money is not his property, but the property of the body politic, for which it is required to be safely kept. But the fact that the moneys received in this case belong to the county in no way lessens the degree of defendant's responsibility; nor has such fact any tendency to show that his obligation is not absolute,—to safely keep the moneys coming into his hands." This case is followed and approved in County Commrs. of McLeod Co. v. Gilbert, 19 Minn. 176 (214), and Redwood Co. v. Tower, 28 Minn. 45, 8 N. W. 907, where the statutory provisions were to the same effect. The statute under consideration in the Jewell case required the treasurer to execute a bond conditioned for the faithful discharge of his duty as treasurer, and declared that he should receive, and, upon order of the board, pay out, all moneys belonging to the district, and to pay over to his successor in office, upon demand, all moneys in his possession belonging to the district; and the bond followed the statute. It therefore becomes evident that in the Jewell case the court did not intend to abrogate the common law where the statute did no more than to re-enact it.

In the present case the duties imposed upon the clerk of court with reference to funds coming into his hands are no other or greater than those imposed by the common law, and the mere fact that an inference arises by the general tenor of the statute that he is to pay over such moneys to the proper parties does not change that rule. I have found no case, nor has one been presented, where the strict rule of absolute liability has been applied under a statute similar to the one now involved. In every instance the language corresponded to that already referred to in the cases above reviewed.

The courts have given different reasons for coming to the same conclusions, and, as in New York, have distinguished between private and public funds; but nowhere, by any court, has the common-law rule been abrogated, in the absence of express provisions either in the statute or bond. In order to hold the officer under consideration absolutely liable, such obligation must rest upon one of two grounds: Either because the statutory provisions refer-

red to abrogated the common-law rule, or that the common-law rule should be abrogated, regardless of the statute, upon considerations of public policy. I do not believe the language of our statute either directly or impliedly extends the common-law test of liability. And I am not prepared to fasten upon this class of officers the strict rule applied by the decision. That degree of responsibility is manifestly unreasonable and unjust when applied to officers whose possession of funds is merely incidental to their official duties, and, whether it shall be so applied, the legislature, not the court, should determine.

I therefore dissent.