[Pope & Co. v. Union Warehouse Co.]

# Pope & Co. *v.* Union Warehouse Co.

### Trover.

(Decided November 11, 1915.   70 South. 159.)

1. **Bailment; Wrongful Delivery; Liability.**—Where a bailee wrongfully delivers the property of one bailor to another bailor, who mistakenly, but in good faith, receives it as his own and converts it to his own use, the conversion is not wrongful as to the bailee, and he cannot maintain trover therefor, although wrongful as to the true owner.

2. **Same.**—In such a case the bailee is himself guilty of wrongful conversion and liable to the true owner, and he cannot maintain that the reception of the chattel by one other than the true owner was wrongful.

3. **Same; Fraud; Effect.**—A bailee can recover from one to whom he wrongfully delivers bailed goods when such person secures the chattel by deception or fraud upon the bailee.

4. **Warehousemen; Lien; Interest.**—A bailee-warehouseman has such a property in the chattel bailed as will support an action in his own name for its wrongful conversion.

5. **Trover; Pleadings; Facts.**—Although in a count for trover it is not necessary to recite the facts relied upon to show the conversion, yet where such facts are recited the merits of the case must be tested by them.

6. **Warehouseman; Action; Pleading; Sufficiency.**—A complaint in trover alleging that a bale of cotton was received by plaintiff as a warehouseman, and turned over and delivered to defendant at their instance and request, they claiming the bale of cotton to be theirs, when as a matter of fact it was not, and plaintiff had to pay to the true owner the value of said cotton and claims under the true owner's title and right does not state a cause of action in trover, for, so far as the plaintiff is concerned there was no wrongful conversion by the defendant.

7. **Champerty and Maintenance; Property Held Adversely.**—Where a warehouseman has wrongfully delivered the goods to another, and in good faith had rescinded the same, and thereafter paid the true owner the value of the goods, although the owner's title vested in the warhouseman as between it and such owner, such transfer did not pass to plaintiff, the owner's right of action against defendant for conversion, since the property was adversely held at the time of the transfer.

8. **Subrogation; Wrongful Delivery; Payment to True Owner.**—Where a warehouseman wrongfully delivers goods to a third party who was not the true owner, and then paid the true owner for the value of the goods, this does not subrogate the warehouseman to the owner's rights, since the doctrine of subrogation does not apply where the would-be subrogator merely discharges the liability for which he is himself originally and separately liable.

APPEAL from Coosa Circuit Court.
Heard before Hon. S. L. BREWER.

Trover and conversion of the Union Warehouse Company against S. H. Pope & Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Transferred from Court of Appeals under act creating said court.

RIDDLE, ELLIS & RIDDLE, for appellant. JOHN A. DARDEN, for appellee.

SOMERVILLE, J.—The first count of the complaint claims for the conversion of a bale of cotton which "was received by plaintiff as a warehouseman and which was turned over and delivered to defendants at their instance and request, defendants claiming the bale of cotton to be theirs, when as a matter of fact it was not, but was the property of the Gilliland Mercantile Company, and plaintiff has had to pay the Gilliland Mercantile Company for the said bale of cotton and claims under their title and right."

The second count claims a certain sum as the value of a bale of cotton, with an allegation of the same facts as in the first count, and further that, having paid the rightful owner for the cotton, plaintiff is "subrogated to the right, title, and interest of the Gilliland Mercantile Company."

(1) When a bailee, having chattels belonging severally to different bailors, mistakenly and wrongfully delivers the property of one bailor to another bailor, who mistakenly receives it as his own, and before demand for its restitution converts it in good faith to his own use, such conversion, though wrongful as to the true owner (40 Cyc. 465, C), is not wrongful as to such bailee; and the latter cannot maintain trover therefor (*Hills v. Snell,* 104 Mass. 173, 6 Am. Rep. 216, citing in note to *Bolling v. Kirby,* 90 Ala. 215, 7 South. 914, 24 Am. St. Rep. 805; and in 40 Cyc. 463).

(2) In such a case the bailee is himself guilty of a wrongful conversion and liable in trover to the true owner.—*Ala., etc., Co. v. Kidd,* 35 Ala. 209. And the bailee cannot maintain that such reception and use of the chattel by the pseudo-bailor was tortious; for, as said in *Hills v. Snell, supra,* "he cannot take advantage of his own mistakes to convert into a tort that which has been done in good faith in pursuance of authority given by

himself," though he might reclaim the property from any one having it in possession, or recover its proceeds from any one who has sold it.—See *Miller v. Hirschberg* (Or.) 37 Pac. 85.

(3) No doubt, the rule of liability would be otherwise if the bailee were induced to surrender the chattel by some plausible deception practiced upon him by the pseudo-bailor.—*McWhorter v. Moore,* 7 Ga. App. 439, 67 S. E. 115.

(4) In the foregoing discussion we have of course assumed, as is well settled by the authorities, that bailee-warehouseman has such a property in the chattel bailed as will support an action in his own name, in proper cases, for its wrongful conversion.—*Montgomery, etc., Co. v. Montgomery, etc., R. Co.,* 86 Ala. 372, 5 South. 735; 3 R. C. L. 129.

(5, 6) It was not necessary for the trover count, if in Code form, to recite the facts upon which the charge of conversion was founded; but, having done so, the merit of the case made must be tested by the facts recited. We think it is quite clear, under the principles of law already stated, that the trover count does not state a cause of action, since, though every fact alleged were proven, no wrongful conversion would be shown so far as the plaintiff's rights as bailee are concerned.

(7) The language of the count indicates, however, that plaintiff is suing as the successor in title of the true owner—this upon the theory that its own wrongful conversion of the cotton, followed by its payment of the value thereof to the true owner, vested in itself the owner's title and also his right of action against this defendant. That such a payment would pass the title as against such owner is, of course, well settled.—*White v. Martin,* 1 Port. 215, 26 Am. Dec. 365; *Vandiver v. Pollak,* 107 Ala. 547, 19 South. 180, 54 Am. St. Rep. 118. But it is equally well settled that the sale of a chattel which is adversely held by another passes no right of action as against him.—*Foy v. Cochran,* 88 Ala. 353, 6 South. 685. And the rule must, we think, be the same whether the sale is voluntary and direct, or involuntary and indirect as the result of a conversion and the subsequent satisfaction of the tort.

In this case the owner of the cotton had a right of action in trover against this defendant, and he might have recovered the cotton in detinue as long as it remained in defendant's possession. But he could not pass to this plaintiff by sale or otherwise

his (the owner's) right of action against this defendant, under the circumstances shown.

(8) Nor. can the effect of these principles be avoided by any theory of plaintiff's "subrogation" to the rights of the true owner —an equitable doctrine which can have no application to a case where the would-be subrogator has merely discharged a liability for which he was himself originally and separately liable.

It may be that a demand for the bale of cotton made upon defendant while he still had it in his possession would, if refused, render his subsequent disposition or retention of the cotton tortious and actionable. And it may be, also, that by a sale of the cotton the defendant might have become liable under a common count for money had and received to plaintiff's use. But the pleadings do not present these questions, and we do not undertake to decide them.

The rulings of the trial court on the pleadings are not in harmony with the law as above enunciated, and the judgment must therefore be reversed, and the cause remanded for another trial in accordance therewith.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.