160 So. 706

**RICHARDS v. MONTGOMERY, Superintendent of Banks.**

6 Div. 703.

Supreme Court of Alabama.

March 21, 1935.

Rehearing Denied April 25, 1935.

308

Lange, Simpson & Brantley, of Birmingham, for appellant.

Wilkinson & Wilkinson, of Birmingham, for appellee.

FOSTER, Justice.

This is an action of detinue for the recovery of a certain defined certificate for shares of stock in a corporation, a building and loan association.

Plaintiff claims title by virtue of a collateral note executed to her by her son W. M. Richards, in whose name the certificate was issued, and by a sale of it under power in the note to satisfy the debt, giving her authority to buy at the sale. The note was dated October 10, 1930, but was not executed as indicated by the evidence until some time after March 6, 1931; the exact date is not clear. It was in renewal of another, said to mature October 10, 1930. At the time it was executed, whether on October 10, 1930, or after March 6, 1931, the stock certificate was at the time in the possession of the liquidating agent of the Woodlawn Savings Bank, which went into liquidation July 6, 1929. W. M. Richards was indebted to the bank as evidenced by notes, which had no provision for transfer of the certificate. But it was transferred in blank signed by W. M. Richards, witnessed by Dr. Bell, president of the bank, and in its custody. Richards claimed that the certificate was there merely for safe-keeping. There was some corroboration of that claim. But the liquidating agent refused to surrender the certificate, and there was no record to show that the assignment was not made as collateral security to the bank so in possession of the certificate, nor that it was for that purpose,

further than the circumstance of its assignment in blank, in the custody of the bank, and that the owner owed the bank a debt.

The defendant, representing the bank, takes the position, in the first place, that the note, if executed in good faith, did not convey the legal title to the plaintiff; that it was but an attempt to pledge without a delivery of possession of the certificate, and thereby failed to pass the legal title necessary to sustain an action of detinue.

■ Shares of stock have a distinct status and are personal property transferable as such, subject to certain principles peculiar to them. Section 6994, Code; Gen. Acts 1931, p. 565; B'ham. Tr. & Savs. Co. v. La. Nat. Bk., 99 Ala. 379, 13 So. 112, 20 L. R. A. 600; B'ham. Tr. & Savs. Co. v. Cannon, 204 Ala. 336, 337, 85 So. 768. As between the seller and his purchaser, they are salable somewhat as other personal property, except where some statute or special rule is applicable. They are not governed by all the rules applicable to notes or other contracts to pay money, nor by section 9231, Code, but to sales of personalty to the extent that special provisions are not made. Uniform Stock Transfer Act, July 22, 1931, p. 565.

■ The note here in question provides that the maker "having deposited as collateral security for the payment of this note" certificate No. 95, etc. But it was not in fact so deposited. Apt words of conveyance are not necessary to transfer the title of personal property any more than of realty. Section 6839, Code; Pierce v. Jackson, 56 Ala. 599; Campbell v. Woodstock Iron Co., 83 Ala. 351, 3 So. 369; Jackson v. Rutherford, 73 Ala. 155, 157; Barnhill v. Howard, 104 Ala. 412, 417, 16 So. 1.

The form and language of the instrument make it a mortgage sufficient to pass the legal title,. and to vest in plaintiff, the purchaser at foreclosure, a title free from the equity of redemption. Campbell v. Woodstock Iron Co., supra; Oden v. Vaughn, 204 Ala. 445, 85 So. 779; Ala. State Bank v. Barnes, 82 Ala. 607, 2 So. 349. We are not therefore concerned with the law applicable to pledges. It was a valid hypothecation (14 Corpus Juris, 720, § 1101; 31 Corpus Juris, 234) in form sufficient to write in the instrument the qualities of a chattel mortgage. Delivery of possession was not necessary. If the note was executed and foreclosed, the purchaser acquired at the sale such title and right as the maker had, and could maintain detinue against him for the certificate here in question. Pierce v. Jackson, supra.

■ But the general rule is well settled in Alabama, not changed by amendment to section 7453, Code, applicable to ejectment suits, that when a conveyance is made of personal property which is at the time in the adverse possession of a third person, no title passes to the grantee which will sustain an action of detinue against such adverse possessor. Foy v. Cochran, 88 Ala. 353, 6 So. 685; Huddleston v. Huey, 73 Ala. 215; Ala. State Bank v. Barnes, 82 Ala. 607 (6), 618, 2 So. 349; Pope v. Union Warehouse Co., 195 Ala. 309, 70 So. 159.

■ A different rule is applicable to contracts for the payment of money, not negotiable, by virtue of section 5699, Code, although the note is adversely held when it is assigned by separate instrument. Planters' & Merchants' Ins. Co. v. Tunstall, 72 Ala. 142; Lee v. Wimberly, 102 Ala. 539 (6), 551, 15 So. 444; Bohanan v. Thomas, 159 Ala. 410, 49 So. 308; Snead v. Bell, 142 Ala. 449, 38 So. 259; Strickland v. Lesesne & Ladd, 160 Ala. 213, 49 So. 233.

At the time plaintiff's mortgage was executed, whether on its date October 10, 1930, or after March 6, 1931, as a tendency of the evidence shows, it was long after the bank went into liquidation on July 6, 1929. The documentary evidence showed that at that time, the certificate was assigned by W. M. Richards in blank, witnessed by Dr. Bell, president of the bank, now dead, and in its physical possession, not in a lock box owned or leased by Richards, and that he owed the bank a large debt evidenced by notes without any provision for their transfer as security for the debt.

■ Richards was not a competent witness as to any transaction with Dr. Bell. This is conceded, and no attempt was made to prove such transaction by him. But there was no competent evidence that a transfer was not made to the bank in a transaction with Dr. Bell, except as implied from the testimony of Richards relating to his transaction with Mrs. Gribbon. Richards testified that the transfer of the certificate was a feature of a different transaction. But it had not been erased when that was canceled. He testified that he had the certificate in a lock box, and that he and Mrs. Gribbon, connected with the bank as vice president and cashier, arranged for his papers to be taken out of the lock box and held there for him, whereupon they were placed on top of the safe in the vault; that they were not deposited as collateral to the bank. Mrs. Gribbon testified that the certificate was taken out of the box and left in the bank; that she did not know whether or not Dr. Bell was holding the stock certificate as collateral for

310

Richards' debt. Mr. Metcalf, the liquidating agent for the bank, testified that he first came in contact with the affairs of the bank after it closed in July, 1929, not then as liquidating agent, but was made such agent March 1, 1931. But that he went out there in July, 1929, for the liquidating agent, as soon as the bank failed. He further testified that this stock certificate was in a box with a lot of collateral in envelopes lined up in alphabetical order in the "Rs"; that such collateral was that of people indebted to the bank; that Richards made demand on him first after March 1, 1931, about a couple of months. Richards testified that he made demand on some one else in charge soon after liquidation began, but not Metcalf at that time, and that the man told him the papers were there, but that he could not give out anything in the bank.

■ From all this, it appears that the liquidating agent was justified in claiming the stock as collateral security to the bank until the contrary was made to appear; that this claim existed when plaintiff's mortgage was executed is clear; and that it was adverse to Richards. Plaintiff cannot therefore sustain an action against the superintendent of banks based on her mortgage.

It does not clearly appear whether the court trying without a jury rendered judgment on that theory, or because he found that plaintiff's mortgage was not made in good faith as it purports to be, or because he found that there had been a prior assignment to the bank as collateral. The witnesses did not testify orally before the judge trying the case.

Without discussing those questions, we think it was justified for the reason which we have assigned.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.