**HOMETRUST LIFE INSURANCE COMPANY, Appellant,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY and National Surety Corporation, Appellees.**

No. 18745.

United States Court of Appeals
Fifth Circuit.

Jan. 11, 1962.

Joe T. Pilcher, Jr., James M. Wright, Jr., Jack Crenshaw, Selma, Ala., Wright, Long, Booth and Franco, Montgomery, Ala., for appellant.

Watkins C. Johnston, Charles E. Porter, Rushton, Stakely & Johnston, Montgomery, Ala., for appellees.

Before RIVES and WISDOM, Circuit Judges, and CARSWELL, District Judge.

RIVES, Circuit Judge.

Hometrust Life Insurance Company sued United States Fidelity and Guaranty

Company and National Surety Corporation as sureties on the official bond of Honorable John M. Brandon as Treasurer of the State of Alabama for a four-year term beginning January 17, 1955. The condition of the bond was:

"Now, if the said John M. Brandon shall faithfully perform all of the duties of said office, which are, or may be required of him by the Constitution and the laws of the State of Alabama, so long as he continues in said office, or continues to discharge any of the duties thereof, then the above obligation to be void; otherwise to remain in full force and effect."

For the better protection of its policyholders, Homestead was required to keep at all times $100,000.00 invested in approved securities,[1] and on deposit with the Treasurer of the State of Alabama.[2] The official duties of the Treasurer require him to have the custody of and to "keep safe" the said securities.[3]

On February 16, 1956, John Brandon, as State Treasurer, issued his "Certificate of Deposit" certifying that Home Trust "has made with this Department a deposit of approved securities of the par value of One hundred thousand Dollars, as shown in the schedule hereto annexed; that said deposit is made by said company, or association, for the benefit, security and protection of all its policyholders and creditors in the United States; that said deposit is held by me as such state official in trust for the benefit, security and protection of all the policyholders and creditors of said company or association in the United States; that said securities are of the class contem-

1. "§ 70. *Domestic life companies must have one hundred thousand dollars invested in approved securities.*—Every life insurance company doing business in Alabama, chartered by the laws of this state, shall be required for better protection of the policy holders, to keep at all times the sum of one hundred thousand dollars invested in bonds and securities worth not less than said sum, or in mortgages on real estate of the value of twice the indebtedness secured thereby; all to be certified as safe and worth said amount of one hundred thousand dollars by the superintendent of insurance. It shall be the duty of the superintendent of insurance, on the application of any such company, to pass upon the value of any other securities belonging to said company, certifying their value to the treasurer, who shall receipt for and hold them, as provided in section 73 of this chapter." Code of Ala.1940, Title 28, § 70.

2. "§ 73. *Treasurer to take and hold deposits of securities; exchange and withdrawal of same.*—The treasurer of the state, in his official capacity, shall take and hold deposits made by any domestic insurance company, for the purpose of complying with the laws of any other state, to enable such company to do business in such state, and shall, also in like manner, take and hold any deposit made by a foreign insurance company under any law of the state. The company making such deposit shall be entitled to the income thereof, and may, from time to time, with the consent of the treasurer, when not forbidden by the law under which the deposit is made, change in whole or in part the securities which compose the deposit for other competent securities of equal value. Upon request of any domestic life insurance company, said treasurer may return to such company the whole or any portion of the securities of such company, when he shall be satisfied that the securities so asked to be returned are subject to no liability, and not required to be longer held by any provision of law, or purpose of the original deposit. And he may return to the trustee, or other representative authorized for that purpose, of a foreign insurance company, any deposit made by such company, when it shall appear that such company had ceased to do business in the state, and is under no obligation to policy holders or other persons in the state, or in the United States, for whose benefit such deposit was made." Code of Ala.1940, Title 28, § 73.

3. "§ 211. *Powers, functions and duties.*— The powers, functions and duties of the treasurer shall be: * * *. To have the custody of and to keep safe all moneys, bonds, mortgages, and other securities required or permitted by law to be deposited with the state or any officer thereof, by any bank, trust company, insurance company, mutual aid or benefit association, or other person or corporation * * *." Code of Ala.1940, Title 55, § 211.

plated and permitted by the laws of this State for such purpose; and I am satisfied are worth not less than One hundred thousand Dollars."

Included in the approved securities so deposited were 10 Board of Education of Florence, Alabama, Capital Outlay School Warrants, each of the face value of $1,000.00.

The district court found:

"These warrants remained on deposit with the State Treasurer until the 16th day of August, 1956, when John Brandon, the then Treasurer, acting under color of his office and in his official capacity as such, or acting through his agent, Frank Barefield, released said Florence, Alabama, Board of Education Warrants for certain warrants or bonds issued by the City of West Buechel, Kentucky. The West Buechel bonds totaled ten in number and each was stamped for $1,000.[2]

---

[2] These Florence, Alabama, warrants were withdrawn (later redeposited) on June 8, 1958, through the same procedure the plaintiff now complains of.

"The release of the 'Hometrust' Florence, Alabama, Board of Education warrants for the West Buechel, Kentucky, warrants was by Treasurer Brandon and/or his assistant, Frank Barefield, upon receipt of the following letter by Brandon from Leslie L. Gwaltney, the then Superintendent of Insurance for the State of Alabama:

" 'July 16, 1956
" 'Hon. John Brandon
" 'State Treasurer
" 'Capitol
" 'Dear Mr. Brandon:
" 'I approve and hand you herewith the following described securities to be deposited in the name of Home Trust Life Insurance Company, Montgomery, Alabama.
" 'Bonds Nos. C–329/C–338 Commonwealth of Kentucky, County of Jefferson, City of West Buechel Waterworks Sewer, Drainage and Street Revenue Bonds—3⅝% 10 at 1 M ................. $10,000.00

" 'Please deliver to the bearer the following described securities:
" 'Nos. 536/45 Board of Education of Florence, Alabama 2¾% Capital Outlay School Warrants dated 10/1/54 due 2/1/76 10 at 1 M .................... $10,000.00
" 'Yours very truly,
" '(S.) LESLIE L. GWALTNEY, JR.,
" '(Leslie L. Gwaltney),
" 'Superintendent of Insurance.'
" 'LLG/mcd
" 'Received 7–16–56 Ruth McDougald'.

"The release of the Florence, Alabama, Board of Education warrants by the Treasurer was to Ruth McDougald, the then Secretary to the Superintendent of Insurance. With the worthless (it is not seriously contended otherwise) West Buechel, Kentucky, warrants then on deposit with the Treasurer to the account of 'Hometrust', the valuable Florence, Alabama, Board of Education warrants were delivered by the Secretary to the Superintendent of Insurance, to Gwaltney as the Superintendent of Insurance. The Florence, Alabama, Board of Education warrants were never returned for deposit to the credit of 'Hometrust'."

From at least 1934 to the time of the exchange involved in this case, the following was stipulated to be "the course of conduct followed in regard to the matter of exchanges of securities held by the Treasurer in the statutory deposit of domestic life insurance companies":

"That where when a domestic life insurance company desired to make an exchange of securities in its statutory deposit, it would on all occasions first make application to the Commissioner of Insurance for approval of such exchange; that upon approval by the Superintendent of Insurance

of securities to be exchanged for those deposited with the State Treasurer, the Superintendent of Insurance would note his approval, authorize the exchange and cause the exchange by issuance of a letter under his signature to the Treasurer of Alabama, in words and figures substantially as follows:

" 'Hon. (Name of Treasurer)

 " 'State Treasurer

  " 'Capitol

" 'Dear Mr. (Name):

 " 'I approve and hand you herewith the following described securities to be deposited in the name of (Name of Domestic Company):

 " '(Description of Securities to be deposited.)

 " 'Please deliver to the bearer the following described securities:

 " '(Description of Securities to be released.)

 " 'Yours very truly,

 " '(Name),

 " 'Superintendent of Insurance.' "

"That upon delivery of the foregoing letter together with the approved securities to the office of the State Treasurer, the aforesaid letter would become a part of the permanent record of the State Treasurer, the approved securities would be placed on deposit for safekeeping with the State Treasurer and the securities noted in the letter to be released by the State Treasurer would thereupon be released by the State Treasurer in accordance with the verbiage in the aforesaid letter, to the Commissioner of Insurance or his representative.

"That the determination of relative value of securities involved in the exchange and the determination of whether the exchange should or would be made, was in all instances made by the Superintendent of Insurance and in no instance by the State Treasurer.

"That the Treasurer would make an exchange of such securities only upon receipt of a letter from the Superintendent of Insurance approving the same and requesting the Treasurer to make such exchange." [4]

Considering that course of conduct as an administrative construction placed upon the statutes (notes 1 and 2, supra) by the officers authorized to administer them, the district court concluded:

" * * * that Treasurer Brandon in making the exchange that forms the basis for plaintiff's complaint in this case performed his duties in a reasonable manner and in accordance with a reasonable construction of the applicable law. This Court further concludes that Treasurer Brandon discharged the degree of care the law imposed upon him in this transaction and therefore was not guilty of any breach of duty and was not guilty of any conduct that amounted to or constituted a breach of his official bond."

The district court further concluded that:

" * * * even if Brandon committed a negligent or wrongful act in making the exchange that 'Hometrust' complains of, the intentional or grossly negligent act of Gwaltney in disposing of the Florence Board of Education warrants after they were received by Gwaltney in his official capacity as Superintendent of Insurance from Brandon, cannot be said to have been reasonably foreseeable by Brandon, and 'Hometrust's' real complaint is, as this Court sees it, against Gwaltney and/or his sureties. See Restatement of the Law of Torts, § 448; Liberty National Life Insurance v. Weldon, 267 Ala. 171, 100 So.2d 696, 61 A.L.R.2d 1346.

4. That course of conduct has been changed and the State Treasurer now requires a certified copy of a resolution of the board of directors of the insurance company authorizing him to make the exchange of securities.

"Since Brandon was not guilty of any negligent or wrongful act proximately causing the damages of which plaintiff complains and since if he was guilty of any such act the intervening wrongful or negligent act of Gwaltney constituted proximate cause, the judgment must be entered in this case in favor of the defendants."

On this appeal, we shall consider first the grounds upon which the district court based its judgment for the defendants, and shall then consider certain additional grounds or reasons urged by the appellees as sufficient to support the judgment.

■ Three different standards of liability of a public officer entrusted with public moneys have been recognized: 1. According to the weight of authority he becomes an insurer, and is absolutely liable for losses which occur even without his fault, except for losses by act of God or by public enemies. 2. In other jurisdictions he is regarded as a bailee for hire, and is liable only for the failure to use *ordinary* diligence and care. 3. "A third and intermediate doctrine is that considerations of public policy enlarge the degree of responsibility of the officer beyond that of a mere bailee for hire; the officer is exonerated only when he has observed the highest care, vigilance and diligence to prevent loss." 43 Am.Jur. Public Officers, § 310; see also § 309, and authorities there collected; 67 C.J.S. Officers § 119(a).

The third and intermediate doctrine just mentioned seems to prevail in Alabama, though, as to actual diversion of specific funds to an unauthorized purpose, the officer may be liable as an insurer. The leading case in Alabama is State v. Houston, 78 Ala. 576, which involved the accountability of a tax collector and the defense of robbery without fault on the part of the officer. The court said:

"From the course and character of the legislation, construed on principles of public policy, the only reasonable inference is, that it was the intention to exact of officers charged with collecting, keeping, and paying over the public revenue, the highest care, vigilance and diligence known to the law, such as a very prudent and cautious man exercises in respect to the most important matters. Our conclusion is, that, while the official bond does not impose absolute and unconditional liability, the statutory provisions, and considerations of public policy, enlarge the degree of responsibility beyond that of a mere bailee for hire; and if, having observed the highest care, vigilance, and diligence to prevent loss, the collector is robbed of money belonging to the State by irresistible force, it constitutes a valid defense to an action on his bond for the recovery of such money. We say *money belonging to the State,* for, if it appears that the specific funds received by the collector have been used or changed for any unauthorized purpose, he becomes *eo instanti* a debtor, and he and his sureties are bound to absolute payment, as for a debt. In such case, subsequent robbery of money substituted for the amount misused is no defense." (Italics by the Court.)

In the case of a Judge of Probate who made an unauthorized deposit of public money in a bank, the Supreme Court of Alabama quoted with approval from State v. Houston, supra, and added:

"In the present case, as has been shown, the absolute liability, as for a debt, was fixed upon the probate judge and the sureties on his bond by the unauthorized deposit in bank; so that no question is presented as to what the liability would have been if the probate judge had not voluntarily relinquished his custody of that license money."

Alston v. State, 1891, 92 Ala. 124, 9 So. 732, 733.

The Houston case and the Alston case were applied to the liability of a register in chancery for moneys deposited in a bank which failed. Clisby v. Mastin,

1907, 150 Ala. 132, 43 So. 742. To like effect, see Moody v. Jacobs, 1924, 211 Ala. 291, 100 So. 467.

In National Surety Co. v. State, 1929, 219 Ala. 609, 123 So. 202, the good faith of a county treasurer was held no defense to a suit by the State on his official bond for recovery on account of public moneys wrongfully deposited in a bank without surety and lost on the failure of the bank. To like effect is Rushing v. Alabama National Bank, 1933, 226 So. 621, 148 So. 306.

"In a majority of the cases which involve the loss by a public official of private funds received by him in an official capacity, the point that the funds were private was not raised. Anno. 36 L.R.A. (NS) 293." 43 Am.Jur., Public Officers, § 309, n. 14, p. 114. In Alabama that seems to be true in the cases where the register in chancery held private funds. Clisby v. Mastin, supra; Moody v. Jacobs, supra. Where the question has been raised, it has generally been held that there is no distinction, as regards liability, between public and private funds in the official custody of an officer. 43 Am. Jur., Public Officers, § 310, p. 114; 67 C.J.S. Officers, § 119(d); see especially the well-reasoned opinion in Northern P. R. Co. v. Owens, 86 Minn. 188, 90 N.W. 371, 57 L.R.A. 634, 91 Am.St.Rep. 336. The cases which do draw a distinction between the liability for public funds and for private funds appear mostly in those jurisdictions which recognize the strictest standard of liability, that of a virtual insurer, with respect to public funds.

■ Applying the foregoing general rules to the deposit of securities made by Hometrust with the State Treasurer, we conclude that if the Treasurer delivered those securities to any person other than an agent of Hometrust, he did so at his peril, unless he had exercised "the highest care, vigilance and diligence known to the law, such as a very prudent and cautious man exercises in respect to the most important matters," to ascertain

that the person to whom he delivered the securities was the agent of Hometrust.

■ The honesty, integrity and good faith of Mr. Brandon in the performance of his duties as State Treasurer is not and cannot be questioned. Insofar as the Treasurer's Office was concerned, the course pursued in exchanging the securities was that followed from at least 1934 to the time of the exchange involved in this case, July 16, 1956. That course did not, however, evidence any conscious administrative construction of the statutes (footnotes 1 and 2, supra). Those statutes were clear and unambiguous insofar as the person to whom the Treasurer could make delivery of the securities. "Upon request of any domestic life insurance company, said treasurer may return to such company the whole or any portion of the securities of such company * * *." Code of Ala.1940, Tit. 28, § 73. Such a clear and unambiguous statute is not subject to modification or amendment by any supposed administration construction. 25 C.J.S. Customs and Usages, § 10.

Actually the course of conduct followed during those years, instead of amounting to an administrative construction of the statutes, was simply a matter of trusting the person who occupied the office of Superintendent of Insurance, a confidence which for more than twenty years was not abused. It was nonetheless a trust indulged in by the State Treasurer at his peril. Somewhat analogous is the classical expression of the rule of tort liability by Mr. Justice Holmes: "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." Texas & Pacific Ry. Co. v. Behymer, 1903, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905.[5]

The nondelegable duty was imposed on the State Treasurer "to have the custody of and to keep safe all moneys, bonds, mortgages, and other securities required or permitted by law to be deposited with

---

5. Here, of course, the standard was the highest degree of care, vigilance and diligence rather than reasonable prudence.

the state or any officer thereof, by any * * * insurance company * * *." Tit. 55 § 211, 1940 Code of Ala. Compare Ex parte Goodwyn, 1933, 227 Ala. 173, 149 So. 216, 221. Any attempted delegation of that duty was at the peril of the Treasurer.

In Ellis v. Batson, 1912, 177 Ala. 313, 58 So. 193, it was held to be the nondelegable duty of a county treasurer, under Section 211 of Alabama Code of 1907, "to receive and keep the money of the county and to disburse the same according to law." The treasurer undertook to delegate to a banker, who was one of his bondsmen, the duty of receiving and accounting for the money coming into his hands as treasurer, and the bondsman embezzled the money. It was held that the treasurer, as an individual, had no right of action against the bondsman, the Court adding, "Of course, the county could, no doubt, recover the funds belonging to it from Batson * * *."

The case just cited is sufficient answer to the conclusions of the district court that " * * * the intervening wrongful or negligent act of Gwaltney constituted proximate cause * * *" See also Pope & Co. v. Union Warehouse Co., 1915, 195 Ala. 309, 70 So. 159, 160; 6 Am. Jur., Bailments, § 211. If the Treasurer delivered the securities to anyone other than an agent of Hometrust, then, in the absence of the highest care, vigilance and diligence, he became *eo instanti* a debtor to Hometrust, and his sureties are bound to absolute payment, State v. Houston, supra.

For the foregoing reasons, we hold insufficient the grounds upon which the district court based its judgment for the defendants. As additional grounds or reasons sufficient to support the judgment the appellees urge: (A) that the release of securities by the Treasurer to the Superintendent of Insurance was a judicial act for which the Treasurer is immune from civil liability; (B) that the exchange was effected by Frank Barefield, Assistant Treasurer, and that the Treasurer and his securities are not liable for the default of the Assistant Treasurer;

and (C) that the exchange of securities was in fact authorized by Hometrust.

(A) The leading case in Alabama for determining whether a particular act is ministerial or judicial is Ex parte Thompson, 52 Ala. 98 (1876):

"It may not always be easy to ascertain the real character of a statutory power entrusted to a judicial or ministerial officer. When the power is clearly defined and enjoined, does not involve the exercise of discretion or judgment, and no alternative is left to the officer charged with its execution; when he must act without inquiry, and without evidence, and the mode of action is expressly declared, the power is purely ministerial. When, however, the power involves the exercise of judgment and discretion; when it is to be exercised only in an ascertained event and on the concurrence and existence of particular facts, and the officer charged with the execution of the power must determine whether the event has arisen, or the facts exist requiring its exercise, then the power is judicial, or in its nature judicial."

In Firemen's Insurance Co. v. Hemmingway, Cir.Ct., S.D.Miss., 1878, 9 Fed.Cas. 75, 80, No. 4797, it was held that the duties imposed upon the State Treasurer of Mississippi with respect to the deposit of a foreign insurance company "are of a twofold character, partly ministerial and partly quasi-judicial." That the same is true here plainly appears from a reading of the pertinent part of Title 28, Sec. 73, 1940 Code of Alabama: "Upon request of any domestic life insurance company, said treasurer may return to such company the whole or any portion of the securities of such company, [X] when he shall be satisfied that the securities so asked to be returned are subject to no liability, and not required to be longer held by any provision of law, or purpose of the original deposit." Down to the point where we have inserted an "X" the duty is purely ministerial; no discretion is involved other than the exercise of the highest care, vigilance and diligence to

ascertain that Hometrust has made the request, and that the securities are actually being returned to Hometrust. That much is not unusual in any ordinary ministerial act. According to the decision of another panel of this Court in Continental Bank & Trust Co., as Receiver for Inland Empire Insurance Co. v. Brandon, as Treasurer, No. 18,486, 5 Cir., 297 F.2d 928 those duties described in Section 73 following the point where we have inserted the "X" are judicial or quasi-judicial. It is enough in the present case to hold that ascertainment of the person to whom the securities may lawfully be delivered is a purely ministerial act.

 (B) In footnote 4 to its memorandum opinion, the district court stated:

"Because of the conclusions herein reached, this Court need not decide whether Brandon himself delivered the securities to the Secretary for the Superintendent of Insurance or whether he acted through his assistant, Frank Barefield."

It has been held in Alabama that neither an officer nor his bond is liable for the defaults or misfeasances of a clerk or assistant in the absence of negligence in the appointment of the clerk or assistant or failure to properly supervise his acts. State v. Kolb, 1918, 201 Ala. 439, 78 So. 817, 818; cf. State ex rel. Jones v. Stearns, 1917, 200 Ala. 405, 76 So. 321, 323. As has been heretofore held, however, the statutes imposed upon the State Treasurer himself the nondelegable duty to keep safely Hometrust's securities. If Brandon undertook to delegate any part of that duty to Barefield, he remains liable not because of Barefield's dereliction, but because of his own failure to perform his statutory duty.

(C) The district court did not expressly find that the exchange of securities was not in fact authorized by Hometrust. In any event, the case must be remanded for further proceedings in conformity with this opinion. Determination of whether Hometrust or its authorized agent did in fact request the exchange of securities, and whether Gwaltney was

in fact authorized to accept return of the securities as Hometrust's agent can best be made by the district court. It is even possible that by this time Gwaltney may be available to testify on this critical issue.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.